THE LOWELL MANUFACTURING COMPANY, Respondent, *v.* THE SAFEGUARD FIRE INSURANCE COMPANY, Appellant.

Before different policies of fire insurance can be held to contribute to the same loss, the insurance must have been upon the same interest in the same property or some part thereof.

R. & Co., commission merchants in New York, and plaintiff's consignees, having contracted to keep the consigned merchandise insured, among other insurance, procured a policy from defendant insuring plaintiff on its property in the warehouse of R. & Co. The policy contained a provision that, in case of other insurance on the property, the assured could recover only the proportion of a loss which the sum thereby insured bore to the whole amount of insurance, and that "any policy floating or otherwise attaching in whole or in part to the property covered by this policy shall, as between the assured and this company, be con-

sidered as contributing insurance for the full amount of such policy." A fire occurred, destroying the property of plaintiff in the warehouse, and also that of other consignees. In an action upon the policy it appeared that R. & Co. had procured four other policies on merchandise in their warehouse, attaching first to property belonging to certain consignees named, not including plaintiff, then to "their own property or property held by them in trust or on commission, but to the two latter only to the amount for which they as agents may be liable to their principals, and to cover advances." *Held,* that said four policies did not cover any interest of the plaintiff and so could not be resorted to for contribution.

R. & Co. had also procured three general policies "on merchandise their own or held by them in trust or on commission, or sold but not delivered" in their warehouse. *Held,* that said policies upon their face were contributing policies.

Upon the trial, however, plaintiff was allowed to prove, under objection and exception, that R. & Co., in the uniform course of their business, procured specific insurance for plaintiff, which was notified to and paid by it in the monthly accounts current ; that for two other companies whose goods were consigned to them they procured no specific insurance, and had no insurance save as contained in these three policies, which were less in the aggregate than the amount of their consignments, although for more than their loss ; that no loss was claimed or paid under these policies save that of said two consignees, and that no loss was claimed or paid under the specific policies save that of the consignees mentioned in them respectively ; that plaintiff was never notified of or paid for any insurance save that by the specific policies, and never adopted the insurance under the general policies. *Held,* that such evidence was properly received and could be considered in construing the policies, and it fully warranted the inference that the general policies were only intended to cover the property of the two consignees ; and that, therefore, they did not attach to plaintiff's property and were not contributing policies.

*H. Ins. Co.* v. *B. W. Co.* (93 U. S. 527), distinguished.

The rule that parol evidence may not be given to contradict or vary a written contract applies only to the parties to it or their privies ; in an action between one of the parties and a stranger neither is concluded by the contract, but either may give evidence differing from it.

(Argued March 24, 1882 ; decided April 11, 1882.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, entered upon an order made March 1, 1881, which affirmed a judgment in favor of plaintiff, entered upon the report of a referee.

This action was upon a policy of fire insurance issued by defendant, insuring plaintiff against "loss or damage by fire, to

the amount of $5,000, on carpets, their own or held by them in trust or on commission, or sold but not delivered," contained in a building described, in the city of New York, which was the warehouse of George C. Richardson & Co., commission ·merchants.

The facts material to the questions discussed are stated in the opinion.

*George W. Parsons* for appellant. The language used by Richardson & Co. in defining the property was intended to cover any property of their own, or any in which they might have an interest, for advances or otherwise, and property held by them in trust, or on commission, except that in respect to which they owed no duty in regard to insurance. (*Home Ins. Co.* v. *Baltimore Warehouse Co.*, 3 Otto, 542, 544, 546.) All the policies must be treated as covering the same interests, and consequently as constituting double insurance which bound all insurance to contribute to the loss. (Wood on Insurance, § 381; *Hough* v. *People's Ins. Co.*, 36 Md. 398; *Godin* v. *London Ass. Co.*, 1 Burr. 489; 3 Otto [U. S.], 543; 1 Phillips on Insurance, § 366; 2 id., § 1263; *Ogden* v. *The East River Ins. Co.*, 50 N. Y. 390; Flanders on Insurance, 42; *Robbins* v. *Firemen's, etc., Ins. Co.*, 16 Blatchf. 130; *Robbins* v. *The People's Ins. Co.*, by Nixon, J., in U. S. Circuit in New Jersey; 1 Marshall on Insurance, 116–120; *Mussey* v. *Atlas Ins. Co.*, 4 Kern. 79; *Sparrow* v. *Mut. L. Ins. Co.*, U. S. Circuit Mass., SHEPLEY, J., tried in April, 1873; May on Insurance [2d ed.], 551; *Holbrook* v. *Am. Ins. Co.*, 1 Curtis' U. S. C. 193; *Kimball* v. *Howard Ins. Co.*, 8 Gray, 33; *Washington Ins. Co.* v. *Hayes*, 17 Ohio St. 432; *Hough* v. *People's F. Ins. Co.*, 36 Ind. 398.)

*Joshua M. Van Cott* for respondent. If Richardson & Co. were not agents of the Lowell Company in procuring the three policies, and if the Lowell Company never adopted them, those policies were *res inter alios acta*, and cannot affect the Lowell Company. Therefore, evidence of non-agency and non-adoption was competent. (*Forgay* v. *Atlantic Mut. Ins. Co.*, 2

SICKELS — VOL. XLIII. 75

Robt. 95; *McCready* v. *Woodhull*, 34 Barb. 80.) If they might be supposed to have a general authority large enough to authorize them by a general policy in their own names to cover the property of the Lowell Company, such was not their intention, and extrinsic proof is competent to negative such an intention. (*Stillwell* v. *Staples*, 19 N. Y. 401, 405, 406; *Lee* v. *Adsit*, 37 id. 79; 1 Greenl. Ev. 205 a; 2 Arnould on Ins. 1315, 1316; 2 Taylor's Ev., §§ 834, 849, 867; 1 Phillips on Ins., § 382; Angell on F. Ins., §§ 80, 81, 82, 379; *Harvey* v. *Cherry*, 76 N. Y. 436; *Forgay* v. *The Atlantic Mut.*, 2 Robt. 454, 460; *Clinton* v. *Hope Ins. Co.*, 45 N. Y. 454, 460; *Pitney* v. *Glens Falls Ins. Co.*, 65 id. 13, 14; *Robbins* v. *Fireman's Fund Ins. Co.*, 16 Blatchf. 122, 127.) The special trust clause has no relation to the question of double insurance or to this suit. (*Godin* v. *London Ass. Co.*, 1 Burr. 495; *North British* v. *London Ins. Co.*, L. R., 5 Ch. Div. 569.) The insurance against R. & Co.'s liability as agents never attached. They make no claims for indemnity, never having been charged with liability and loss. (*North British* v. *Merc. Ins. Co.*, L. R., 7 C. P. 25; *Joyce* v. *Kinnard*, L. R., 7 Q. B. 78.)

EARL, J. At the time of the transactions out of which this litigation grew, George C. Richardson & Co. were commission merchants carrying on a large business in the city of New York, having no merchandise of their own in their warehouse. Among their largest consignors were the Everitt mills, the Boot mills, the Lewiston mills, the Granite State mills and the Lowell Manufacturing Company, the plaintiff, all New England companies. The value of goods consigned for these companies respectively were, at the time in question, as follows:

| | | | |
|---|---|---|---:|
| For the Everitt mills | | | $15,399 92 |
| " | " | Boot mills | 13,122 39 |
| " | " | Lewiston mills | 21,683 17 |
| " | " | Granite State mills | 10,715 44 |
| " | " | Lowell Manufacturing Co., the plaintiff | 113,287 13 |
| | | | $174,208 05 |

1882.] Lowell Manuf. Co. *v.* Safeguard F. Ins. Co. **595**

Opinion of the Court, per Earl, J.

The amounts which Richardson & Co. so held as commission merchants for the several consignors varied from time to time, being sometimes smaller and sometimes larger. They procured from various insurance companies insurance upon all of the consigned merchandise and paid all of the premiums of insurance in the first instance, being under obligations to their consignors to keep all of the consigned property fully insured.

They procured insurance as follows: (1) By three general policies in the aggregate to the amount of $30,000 in their name "on merchandise, their own, or held by them in trust or on commission, or sold but not delivered," contained in their warehouse; (2) by three policies in the aggregate amount of $30,000 in their name "on merchandise contained in their warehouse, attaching first to property belonging to the Everitt mills, then attaching to their own property or property held by them in trust or on commission, but to the two latter only to the amount for which they, as agents, may be liable to their principals and to cover advances on the same, both or either and to attach to goods sold but not removed from store;" (3) insurance to the amount of $12,500 in one policy in their name, in form precisely like those last stated, except that it was made to attach first to property belonging to the Boot mills; (4) insurance to the amount of $65,000 by five policies, all in their name, and in form entirely like the last stated, except that the policies were severally made to attach first to property belonging to the Lowell Manufacturing Company, the plaintiff; and (5) insurance to the amount of $25,000 by four policies, all in the name of the plaintiff, "on carpets, their own, or held by them in trust or on commission, or sold but not delivered," contained in the warehouse of George C. Richardson & Co. One of these four policies was for $5,000, issued by the defendant, and that is the policy sued on in this action. All the policies contained the following provision: "In case of any other insurance upon the property hereby insured, whether valid or not, or made prior or subsequent to the date of this policy, the assured shall be entitled to recover of this company no greater proportion of the loss sus

tained than the sum hereby insured bears to the whole amount so insured thereon; and it is hereby declared and agreed, that in case of the assured holding any other policy in this or any other company on the property insured, subject to conditions of average, this policy shall be subject to average in like manner. Any policy, floating or otherwise, attaching in whole or in part to the property covered by this policy shall, as between the assured and this company, be considered as contributing insurance for the full amount of such policy, and liable as such to pay *pro rata* any loss, total or partial, on the property hereby insured."

On the 28th day of January, 1878, while all the sixteen policies of insurance were in force, a fire occurred in the warehouse of the consignees by which losses were sustained on the consigned property as follows:

| | |
|---|---:|
| On that of the Everitt mills.................... | $1,971 71 |
| " " Boot mills ............................ | 1,713 77 |
| " " Granite State mills and Lewiston mills together............................... | 9,091 26 |
| " " Lowell Manufacturing Company, the plaintiff ................................. | 83,677 38 |
| | $96,454 12 |

There is no controversy as to the amount of plaintiff's loss and no dispute that it is entitled to be indemnified by the insurances actually made for its benefit; but the sole controversy between the parties has reference to the question of contribution between the insurance companies. The plaintiff claims that contribution to its loss should be made only by the nine companies last above mentioned in the policies of which it is particularly named. The defendant claims that contribution should be made by all the sixteen companies.

It is well to consider first how this controversy will stand upon the face of these policies and the facts already alluded to which, it is conceded by both parties, may be considered in the

construction of the policies. It is clear, we think, that the four policies above mentioned in the second and third classes do not upon their face cover any interest of the plaintiff and hence that they cannot be resorted to for contribution to its loss. Those policies attached first to the property of the mills mentioned, next to the property of the consignees, and lastly to property held by them in trust or on commission, but only to the amount for which they, as agents, were liable on account of such property and also to cover advances on the same. It is thus plain that those policies, besides the property of mills named, covered only the property of the consignees or such interest as they had in property held by them in trust or on commission on account of their liability as agents and of advances made by them. There was not, therefore, double insurance. Before different policies can be held to contribute to the same loss the insurances must have been upon the same interest in the same property or some part thereof. The following authorities sufficiently illustrate the doctrine of double insurance as it must be applied to this case. (*Home Ins. Co.* v. *The Baltimore Warehouse Co.*, 93 U. S. 527; *The Mutual Safety Ins. Co.* v. *Hone*, 2 N. Y. 235; *North British & M. Ins. Co.* v. *The London*, L. & G. *Ins. Co.*, L. R., 5 Ch. Div. 569; *North British & M. Ins. Co.* v. *Moffatt*, L. R., 7 C. P. 25; *Joyce* v. *Kennard*, L. R., 7 Q. B. 78.) In Phillips on Insurance, section 359, it is said that "double insurance is where two or more insurances are made in favor of the same assured, on the same interest, subject against the same risks." The plaintiff could not have resorted for their indemnity to those four policies and could in no way have received the insurance affected by them. Hence there was no error in the holding by the court below that those were not contributing policies.

It only remains to be determined whether the three general policies mentioned in the first class were contributing policies; and clearly upon their face and upon the facts already alluded to they were. They were general policies covering all merchandise held by the consignees in trust or on commission, and that language was sufficient to cover plaintiff's merchandise

which was held both in trust and on commission, and for this conclusion the case above cited from the United States Supreme Court is sufficient authority. But upon the trial of the action certain facts were proved against the objection of the defendant which must now be referred to. It was proved upon the trial that the only consignors of Richardson & Co. were nine New England mills; that four of those mills attended exclusively to their own insurance; that the consignees, in the uniform course of their business, procured specific insurance for the Lowell, the Everitt and the Boot mills, which was notified to them and paid for by them respectively in the monthly accounts current; that they procured no specific insurance for the Lewiston mills and the Granite State mills, from which they received *del credere* commissions which covered the cost of insurance; that no insurance was charged to the last two mills except as included in the *del credere* commissions, and that those two mills had no insurance except as contained in these three general policies, which were for less in the aggregate than the value of their consignments, but for more than their loss; that no loss was claimed or paid under these general policies except the losses of the Lewiston and the Granite State mills, and that no loss was claimed under the twelve specific policies except by the mills mentioned in them respectively; that the Lowell, Everitt and Boot mills were never notified of, and never paid for, any insurance except the insurances by the specific policies, and that neither company adopted the insurance under the general policies; and the inference from these facts is fully authorized that these general policies were intended by the consignees to cover only the property of the Granite State mills and the Lewiston mills.

If the facts thus stated were properly proved and are to be considered in the construction of the policies, then I do not understand that it is disputed that the three general policies did not attach to plaintiff's property, and hence that they cannot be held to be contributing policies.

But the contention on the part of the defendant is, that parol evidence could not be received to vary or affect the con-

struction which the general policies would receive if their language only was considered ; that extrinsic facts and circumstances known to only one of the parties to the policies cannot be proved by parol evidence to show that such language means something different from its plain import, the language being so plain and free from ambiguity that its meaning cannot be doubted; and the learned counsel for the defendant, to sustain this contention, calls our attention to the general rule of evidence which prohibits parol evidence to vary, explain or qualify a written instrument embodying the agreement of the parties to the action.

But these general policies were not contracts between the parties to this action, and the wholesome rule above referred to applies only in suits between the parties to the written instruments.  In *Lee* v. *Adsit*, 37 N. Y. 78, it is said that "the rule that parol extrinsic evidence shall not be received to contradict or vary a contract which is in writing, applies only in controversies between the parties, promisor and promisee, in such contract," and that "the writing is not conclusive as between one of the contracting parties and a third person;" and in *McMaster* v. *The Insurance Co. of N. A.* (55 N. Y. 222), it was held that "the rule that parol testimony may not be given to contradict a written contract, applies only in suits between the parties to it or their privies.  In a contention between a party to an instrument and a stranger, either can give parol testimony differing from the contents of the instrument."

Here neither of these parties was a party to these general policies, and it was competent to show by the extrinsic facts that they were not taken out for the benefit of the plaintiff, and that they did not, in fact, attach to or cover its property.

We are also inclined to think that the proof of these extrinsic facts, to apply the general policies to the property actually intended to be covered by them, could be justified upon other grounds, but we have said enough to show that, upon the proofs properly received by the referee, the general policies cannot be held as contributing policies, and that the referee did not err in holding that the nine policies only were bound to contribute to plaintiff's loss.

Upon the point last considered the case of *Home Ins. Co.* v. *The Baltimore Warehouse Co.* (*supra*), is not in conflict with the views expressed, as the parties to that action were parties to the written instrument which was attempted to be qualified or explained by parol evidence.

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed.