# Cases

---

FRED C. EDDY, as Receiver of the SYRACUSE SCREW
   COMPANY, Plaintiff, *v.* LONDON   ASSURANCE
   CORPORATION, Appellant, and GILES   EVERSON,
   Respondent.
   And Seven Other Cases.

*Fire insurance — a policy void between the assured and the company — rights of a*
*mortgagee under various clauses of the New York standard insurance policy —*
*effect of a foreclosure — effect of obtaining additional insurance — subrogation —*
*additional insurance — apportionment of the loss — after one complete appraisal*
*the power of appraisers is exhausted.*

Giles Everson held three mortgages, amounting to about thirty thousand dollars,
   on property of the Syracuse Screw Company, of which Fred C. Eddy subsequently
   became receiver. The property consisted of two lots and buildings, one on
   Pearl street and the other on Lock street, in Syracuse. Certain fire insurance com-
   panies issued five policies, each insuring against loss on the Pearl street property
   in the amount of $2,000, each policy limiting the total risk of all the companies
   to $10,000, and forbidding further insurance unless consented to.
These policies were continued in force for the benefit of the receiver, who also
   procured insurance for $8,000 on the Lock street property from four other
   companies, whose policies permitted " other insurance."
Subsequently, and in July, 1888, the receiver procured of certain other companies
   additional insurance on the Pearl street property without having obtained the
   consent of any of the companies which had previously issued policies upon this
   property. He also obtained additional insurance on the Lock street property.
   All this additional insurance was effected without the knowledge of Everson.

The nine policies first mentioned were in the form known as the standard insurance policy of the State of New York, and in them the loss was made payable to Everson as mortgagee.

In June, 1888, Everson began to foreclose his three mortgages, and thereafter, and on December fourth of that year, a fire occurred which damaged both pieces of property. On December 17, 1888, Everson obtained judgment upon two of the mortgages, and thereafter sold all the property to another person, on which sale a large deficiency resulted.

In February, 1890, he recovered judgment on the remaining mortgage for $12,474. None of the insurance companies consented to these foreclosures, although all the policies contained a clause making them void if, with the knowledge of the insured, foreclosure proceedings were commenced by virtue of any mortgage thereon.

In actions brought by the receiver upon the nine policies, to which Everson was made a party defendant:

*Held*, that the foreclosure proceedings, brought without the consent of the companies, rendered the policies void as between the companies and the receiver.

That the policies upon the Pearl street property were void, as between the receiver and the companies, by reason of the additional insurance which he procured.

A mortgagee clause contained in all the nine policies provided that the insurance, as to the interest of the mortgagee, should not be invalidated by any act or neglect of the mortgagor or owner, nor by any foreclosure, provided that the mortgagee paid the premiums on demand in a case where the mortgagor had failed to pay it. It further provided that whenever the company paid the mortgagee for a loss, while claiming that it was not liable to the mortgagor, it should be subrogated to the rights of the mortgagee, as to all securities held as collateral to the mortgage debt, or that the company, at its option, might pay the mortgage to the mortgagee, and thereupon should become entitled to an assignment of the mortgage and any collaterals, "but no subrogation shall impair the rights of the mortgagee to recover the full amount of his claim."

*Held*, that, as between Everson and the companies, the policies were valid.

That his rights were not affected by the additional insurance nor by the foreclosure proceedings.

That, although Everson had, by proceeding to a sale in his foreclosure, made it impossible that the companies should be subrogated to his rights under the mortgages, yet his sale was proper, it being the only method by which he could enforce his right under the policy "to recover the full amount of his claim."

That the companies had the option to pay the mortgage debt to Everson and take an assignment from him, but had not done so.

That this right of subrogation could not impair his right to recover the full amount of his claim.

The policies contained a clause that the insurer should not be liable for a greater proportion of any loss on the property than the amount thereby insured bore to the whole insurance, whether valid or not, and two of the policies contained such a provision in the mortgagee clause.

*Held*, that, in apportioning the loss, the additional insurance could not be considered in aid of the companies insuring.

That the provisions of the mortgagee clause were in the nature of an independent insurance of the mortgagee's interest, which was not subject to the restrictions of the policy binding upon the mortgagor.

That the two policies, containing in the mortgagee clause the limitation of liability to the proportionate part only of the loss, were to receive the same construction, as any other construction would be inconsistent with the provision that the mortgagee should not be injured by any act of the mortgagor.

That, in the absence of proof of a further agreement between the parties, appraisers of a loss under a policy, who had made a complete appraisal covering the whole subject submitted to them, had no power to make a further appraisal.

APPEALS by the defendant, the London Assurance Corporation, from a judgment of the Supreme Court, entered in the office of the clerk of Onondaga county on the 8th day of July, 1891, in favor of the defendant Giles Everson and against the defendant, the London Assurance Corporation, for $1,281.62, damages and costs.

By the defendant, the Liberty Insurance Company of New York, from a judgment of the Supreme Court, entered in the same office on the same day, in favor of the same defendant, against the Liberty Insurance Company of New York, for the same amount and costs.

By the defendant, the Fire Association of Philadelphia, Pennsylvania, from a judgment of the Supreme Court, entered in the same office on the same day, in favor of the same defendant, against the defendant, the Fire Association of Philadelphia, for the same amount and costs.

By the defendant, the Phœnix Insurance Company of Hartford, Connecticut, from a judgment of the Supreme Court, entered in the same office on the same day, in favor of the same defendant, and against the Phœnix Insurance Company of Hartford, Connecticut, for $2,793.26, damages and costs.

By the defendant, the Westchester Fire Insurance Company of New York, from a judgment of the Supreme Court, entered in the same office on the same day, in favor of the same defendant, against the Westchester Fire Insurance Company of New York, for $1,606.11, damages and costs.

By the defendant, the New York Bowery Fire Insurance Company, from a judgment of the Supreme Court, entered in the same office on the same day, in favor of the same defendant, against the New York Bowery Fire Insurance Company, for $1,606.11, damages and costs.

By the defendant, the Williamsburgh City Fire Insurance Company, from a judgment of the Supreme Court, entered in the same office on the same day, in favor of the same defendant, against the defendant, the Williamsburgh City Fire Insurance Company, for $1,606.11, damages and costs.

By the defendant, the Fire Insurance Association of London, England, from a judgment, entered in the same office on the same day, in favor of the same defendant, against the defendant the Fire Insurance Association of London, for $1,281,62, damages and costs.

All the actions were tried together before the same referee.

All of the actions are upon policies of insurance, obtained by the plaintiff or his predecessor in title, and having the loss payable to Everson as mortgagee. The actions were tried together, the evidence given being deemed to be given in all the cases. There were separate reports and judgments. Everson was made a party defendant, because he declined to be plaintiff, and he put in an answer in each case and served it on his co-defendant.

In and prior to December, 1887, the Syracuse Screw Company, a manufacturing corporation, was the owner of certain property in the city of Syracuse, having thereon two buildings, one on Pearl and the other on Lock street. Everson had three mortgages given by the company upon the entire property, to the amount, altogether, of about thirty thousand dollars. On the 17th of December, 1887, the London Assurance Corporation, the Fire Association of Philadelphia, Pennsylvania, the Phœnix Insurance Company of Hartford, Connecticut, and the Fire Insurance Association of London, England, each issued a policy insuring the company for the term of one year against loss or damage by fire to an amount not exceeding two thousand dollars upon the Pearl street property. On December 29, 1887, a similar policy for same amount was issued by the Liberty Insurance Company of New York city. Each of these five policies had the clause, "privilege for ten thousand dollars concurrent insurance, including this policy." On the 16th of May, 1888, the plaintiff was duly appointed receiver of the Syracuse Screw Company, and the policies, by proper indorsement, were continued in force for the benefit of the receiver, loss payable as before. On the 19th of November, 1888, the New York Bowery Fire Insurance Company and the Williamsburgh City Fire Insurance Company

each issued a policy insuring the plaintiff, as receiver, for the term of one year against loss or damage by fire to an amount not exceeding two thousand dollars upon the Lock street property. On November 20, 1888, the Phœnix Insurance Company of Hartford, Connecticut, and the Westchester Fire Insurance Company of New York, each issued a similar policy for same amount. Each of these four policies had the clause, " other insurance permitted."

The nine policies above described are the policies upon which these actions are brought, and each is in the form known as the standard fire insurance policy of the State of New York, and contains, among other things, the following conditions:

" This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void if, with the knowledge of the insured, foreclosure proceedings be commenced or notice given of sale of any property covered by this policy by virtue of any mortgage or trust deed."

" This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void if the insured now has or shall hereafter make or procure any other contract of insurance, whether valid or not, on property covered in whole or in part by this policy."

" This company shall not be liable under this policy for a greater proportion of any loss on the described property, or for loss by and expense of removal from premises endangered by fire, than the amount hereby insured shall bear to the whole insurance, whether valid or not, or by solvent or insolvent insurers, covering such property, and the extent of the application of the insurance under this policy or of the contribution to be made by this company in case of loss, may be provided for by agreement or condition written hereon or attached or appended hereto."

To each policy there is attached a " mortgagee clause," so called. This clause in the policies of the London Assurance Corporation, the Fire Association of Philadelphia, Pennsylvania, and the Phœnix Insurance Company, of date December 17, 1887, has, among others, the following paragraphs:

" Loss or damage, if any, under this policy, shall be payable to Giles Everson, as first mortgagee (or trustee), as interest may appear, and this insurance, as to the interest of the mortgagee (or trustee) only

therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property, nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title or ownership of the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy; provided, that in case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee (or trustee) shall, on demand, pay the same."

" In case of any other insurance upon the within described property, this company shall not be liable under this policy for a greater proportion of any loss or damage sustained than the sum hereby insured bears to the whole amount of insurance on said property, issued to or held by any party or parties having an insurable interest therein, whether as owner, mortgagee or otherwise."

" Whenever this company shall pay the mortgagee (or trustee) any sum for loss or damage under this policy, and shall claim that, as to the mortgagor or owner, no liability therefor existed, this company shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made under all securities held as collateral to the mortgage debt, or may, at its option, pay to the mortgagee (or trustee) the whole principal due to or to grow due on the mortgage, with interest, and shall thereupon receive a full assignment and transfer of the mortgage and of all such other securities; but no subrogation shall impair the right of the mortgagee (or trustee) to recover the full amount of his claim."

The mortgagee clause in the other policies in controversy was the same, except that the second paragraph above quoted was omitted.

On the 4th of December, 1888, the property insured was partially destroyed by fire. Thereafter, under the provisions of the policies, an appraisal was made of the loss. Upon the Pearl street property the loss was found to be $5,225.15. Upon the Lock street property the loss, as the referee finds, was appraised at $5,322.68. The appellants claim that in this the referee erred, and that the appraisal should be found at $4,877.76.

On the 9th of June, 1888, the defendant Everson commenced, in the Supreme Court, an action for the foreclosure of the three mortgages held by him. To the last one of the mortgages the receiver put in

.a defense. The action as to the other two was severed, and judgment of foreclosure upon them was entered on the 17th of December, 1888. A sale thereon was had on January 9, 1889, and the entire property sold for $15,400, leaving a deficiency unpaid of $4,921.86. Such proceedings were thereafter taken in the action that Everson, on the 19th of February, 1890, recovered judgment upon his other mortgage, it being adjudged that there was due him thereon the sum of $12,474, aside from the deficiency above stated. No consent for or agreement in relation to the foreclosure proceedings was ever obtained from any of the insurance companies.

On the 2d and 25th of July, 1888, the plaintiff obtained from other companies other insurance upon the Pearl street property to the amount of $2,750, running one year. No consent to this additional insurance was given by any of the insurance companies in the present controversy.

The plaintiff also, at the same dates, obtained additional insurance upon the Lock street property to the amount of $1,750, running one year. This additional insurance in both cases was without the knowledge or consent of Everson.

The referee decided that the foreclosure proceedings, without the consent of the insurance companies, rendered the contracts of insurance void as between the plaintiff and the defendant companies, and that the insurance upon the Pearl street property was also void as between the plaintiff and the companies by reason of the additional insurance beyond the $10,000. He, however, held that, as between the companies and Everson, the insurance was good, and that the rights of Everson were not affected by the additional insurance, or by the foreclosure proceedings, and that he was entitled to have the loss upon the Pearl street property apportioned among the companies upon the basis of $10,000 of insurance, and the loss upon the Lock street property upon the basis of $8,000 insurance. This resulted in a judgment in favor of Everson against each of the companies, who issued a policy on the Pearl street property for the sum of $1,045.03, and against each of the companies who issued a policy on the Lock street property for $1,330.67, with interest from March 29, 1889, besides costs. The referee also adjudged in each case that the insurance company, "upon making payment to said

Everson of said loss, is entitled to be subrogated to all the rights of said Everson under any and all securities he may hold as collateral to the said mortgage debt, to the extent of such payment, or to pay the said debt and receive an assignment in full thereof, together with all such securities; but such subrogation cannot impair defendant Everson's right to enforce the collection of his claim in full against the principal debtor, or by means of any collateral security he may hold."

The plaintiff did not appeal.

*A. H. Sawyer*, for the appellants.

*Waters, McLennan & Waters*, for the respondent.

MERWIN, J.:

The questions upon these appeals relate to the rights of the mortgagee against the insurers. The appellants claim that their right of subrogation has been impaired by the foreclosure and sale; that the mortgagee by such sale has put it out of his power to subrogate the insurers to the rights which he had under his securities at the time of the fire, and that, therefore, he cannot recover for the loss.

By the mortgagee clause it was provided that, whenever the insurer should pay the mortgagee any sum for loss, and should claim that, as to the mortgagor, no liability therefor existed, the insurer should, to the extent of such payment, be thereupon legally subrogated to all the rights of the mortgagee, under all securities held as collateral to the mortgage debt, or at its option might pay to the mortgagee the whole of the mortgage debt and thereupon receive a full assignment of the mortgage and all such other securities. It was also provided that no subrogation should impair the right of the mortgagee to recover the full amount of his claim. This permitted the mortgagee to continue the foreclosure proceedings, which were commenced long before the fire, and to apply the proceeds of the sale upon the mortgage debt. In no other way would the right of the mortgagee to recover the full amount of his debt be preserved in accordance with the express stipulation. After the application of such proceeds there still remained a large deficiency, much more than the entire claim against the insurers. The latter did not offer to pay the mortgage debt, as they might have done and taken an assignment.

The appellants, in substance, claim that, upon payment of the loss, they became owners of an equivalent proportion of the mortgage debt and would be entitled to the benefit of the same proportion of the proceeds of the securities. This, however, would be inconsistent with the right reserved to the mortgagee to collect the full amount of his claim, and that the subrogation should not impair it.

In *Foster* v. *Van Reed* (70 N. Y., 19), there was a provision in the policy that in case of loss the assured should assign to the insurer an interest in the mortgage equal to the amount of loss paid. The insurer, however, paid the full amount of the mortgage, and, therefore, no question of importance here was considered. In *Lett* v. *Guardian Fire Insurance Company* (52 Hun, 570; 125 N. Y., 82), the plaintiff was assignee of the policy, but not of the mortgage. He represented the owner of the property, but as to the owner the policy was void. The mortgaged property after the loss was fully sufficient to pay the entire mortgage debt. It was held that plaintiff could not recover as he could not give effect to the right of subrogation which the insurer had upon payment of the loss. Many other cases are cited by the counsel for the appellants, but I find none that sustains the position that under a mortgagee clause like the present one the mortgagee could not enforce his securities to the full amount of his debt. His right to do this was superior to the right of subrogation, and so made in express terms.

The appellants further claim that the referee erred in excluding from the basis of apportionment the additional insurance that the plaintiff had obtained, and in which the mortgagee had no interest.

In the policies upon the Pearl street property the limit of insurance was placed at $10,000. The additional insurance was in violation of this provision, and this, as against the plaintiff, made the policies in suit on that property void. In the policies on the Lock street property there was no such limit. All the additional insurance was without the knowledge or consent of the mortgagee. By the mortgagee clause it was provided that the insurance, as to the interest of the mortgagee, "shall not be invalidated by any act or neglect of the mortgagor or owner." Does this prevent the insurer from having, in the apportionment of the loss, the benefit of the additional insurance?

In the body of each of the policies in suit there is a provision that the insurer shall not be liable for a greater proportion of any loss on the described property than the amount thereby insured shall bear to the whole insurance, whether valid or not. The claim of the appellant is that there is nothing in the mortgagee clause that will prevent giving effect to this provision, and, therefore, including in the apportionment the additional insurance. It was, however, decided in *Hastings* v. *Westchester Fire Insurance Company* (73 N. Y., 141), in regard to the effect of a similar provision in a policy and a mortgagee clause in this respect like the one here, that the insurer was not entitled in the apportionment to the benefit of additional insurance obtained by the mortgagor, without the knowledge of the mortgagee, although, by the policy, other insurance was permitted as it was here in the four policies on the Lock street property. It was there held that the mortgagee clause operated as an independent insurance of the mortgagee's interest and gave him the same benefit as if he had taken out a separate policy free from the conditions imposed upon the owner and making him responsible only for his own acts. (See, also, *Hartford Fire Insurance Company* v. *Olcott*, 97 Ill., 455.)

The Hastings case, it seems to me, disposes, adversely to the appellants, of all question as to the apportionment, except, perhaps, in the cases of the London Assurance Corporation, the Fire Association of Philadelphia, and the case of the Phœnix Insurance Company under its first policy. The mortgagee clause in those three cases had an additional paragraph, that in case of any other insurance upon the described property the company shall not be liable for a greater proportion of any loss than the sum thereby insured bears to the whole amount of insurance on the property, issued to or held by any party or parties having an insurable interest therein, whether as owner, mortgagee or otherwise. In each of those three policies the insurance was limited to $10,000, and the obtaining of the additional insurance was in violation of this provision and, as against the mortgagor, made the policies void. Here, according to the decision in the Hastings case, there was an independent contract between the mortgagee and the insurers, by one provision of which it was agreed that the mortgagee should not be injured by the act of the mortgagor in obtaining additional insurance. Can it be held that, by

another provision, it was understood that he should be injured by such act? Was it the intent of the parties that insurance, obtained by the owner in violation of the limit provided for, and by reason of · which the insurance would be void as against the owner, and the insurer, if it paid a loss to the mortgagee, would have the right of subrogation, should be included in the apportionment of the loss? Effect must be given, if possible, to all the provisions of the contract. The main object of the whole was to give the mortgagee a security upon which he could rely. Any act or neglect of the mortgagor or owner is to be thrown out of view as impairing the security of the mortgagee. This would throw out of consideration the question of additional insurance, as that was the unauthorized act of the owner, and would leave the apportioning paragraphs to apply only to the insurance obtained within the authorized limit, or to any insurance obtained upon the interest of the mortgagee himself. The general rule is that, before different policies of fire insurance can be held to contribute to the same loss, the insurance must have been upon the same interest in the same property, or some part thereof. (*Lowell Manufacturing Co.* v. *Safeguard Fire Ins. Co.*, 88 N. Y., 591.) In *Acer* v. *Merchants' Insurance Company*, (57 Barb., 68), the policy issued to plaintiff contained the condition that "if the assured, or any other person or parties interested, shall have existing, during the continuance of this policy, any other contract or agreement for insurance (whether valid or not) against loss or damage by fire on the property hereby insured, not consented to by this company, * * * then this insurance shall be void and of no effect." It was held that the expression, "other persons or parties interested," referred merely to the parties interested in the plaintiff's insurance, and that if other parties who had a different interest obtained insurance upon their interest, the plaintiff's policy would not be invalidated.

We think that the additional insurance should not be considered in making the apportionment of the loss.

The only other question that need be considered relates to the amount of damages recoverable upon the policies upon the Lock street property. It is claimed by the appellants that the referee erred in finding that the award of loss on that property was the sum of $5,322.68, and that it should have been the sum of $4,877.76.

The difference, being the sum of $444.92, was made up from two supplemental statements, one of $284.05, and the other of $160 90.

In pursuance of the provisions of the policies, an agreement for the appraisal of the amount of the loss was entered into by the parties, a separate agreement being made as to each property. In each agreement E. M. Allen and D. I. Langworthy were named as appraisers, and they in each case named Henry Russell as umpire. The agreement is dated December 7, 1888. Thereafter the appraisers made an award as to the Pearl street property, which is dated December 21, 1888, and about which there is no dispute. An award was made by the appraisers and the umpire as to the Lock street property, which is dated December 28, 1888, and fixes the damage at $4,877.76. At the end of this there is a written approval signed by Everson. This appraisal, in form, is complete and covers the whole subject that was submitted by the agreement, and no reference is made to other or further papers or statements. After the admission in evidence of the appraisals above referred to, Mr. Wilson, the attorney for plaintiff, testified: "I knew about the time when the appraisal was being made; after the appraisal I looked at the papers which they made; I found them at the insurance office of Pickard & Jones, the insurance agents who issued the policies, or some of them; I found the awards which have been introduced in evidence here; I found two additional papers with them — two papers in addition to the two that have been introduced in evidence; I have inquired of Mr. Jones for those papers; Mr. Jones is in court; he states that he has looked for the papers among his papers and is unable to find them." The witness further testified that he made and had correct copies of the two papers and that they were signed by the appraisers, Allen and Langworthy. Upon cross-examination he testified that there were two separate papers; that Henry Boggs, whose name appeared attached to one of the papers, was a machinist, and that he knew nothing about what he had to do with the case, except what the appraisers said; that the appraisers lived in Syracuse; that the two papers were with the two awards in a package, folded in together, and in Mr. Jones' possession; that they were not physically attached to the awards. The copies were then received in evidence over the defendant's objections, which stated, among other grounds, that no sufficient foundation was laid

for the admission of the copies, and that they were incompetent and immaterial. It appeared that notice to produce had been served upon defendant's attorneys.

Both of these papers bear date January 15, 1889. One purports to be signed by Henry Boggs, E. M. Allen and D. I. Langworthy, and is headed "estimate of damages on the following items in building of screw works." The items named are "leather belting," "shafting, pulleys, hangers, etc." "Worthington steam pump" and "small steam pump," and the aggregate of the damages carried out is $284.05. At the bottom is entered "Pearl street." The other paper purports to be signed by Allen and Langworthy, and is as follows: "We, the undersigned, find items to be added to award of fire damages upon Lock street building as follows: Benches and ceilings (shelving), $83.90; counters, $40; stairs, $20; water tank, $7; doors and frames, $10; total, $160.90." There is evidence tending to show that the items in both papers were in or a part of the Lock street building. The referee in his special findings found "that an additional award was also made of $444.95." This was a finding, in effect, that the two papers together constituted an additional award, and was valid as such.

Assuming that a case was made for introducing in evidence copies instead of the originals, the question is whether they amount to a valid additional award. In the first paper there is nothing indicating a design to add to the award on the Lock street property, or to indicate that the damages to the items there specified, so far as they were covered by the policies, were not fully included in the awards already made. In the second paper there appears an intention to add to an award already made of damages "upon Lock street building." This subject was specifically passed upon in the original award. That was dated December 28, 1888, and upon the evidence as it stands we must presume that it was then delivered. The appraisers had no right after that to make an additional award, there being no evidence to show that there was any further agreement upon the subject. (*Doke* v. *James,* 4 N. Y., 568; *Fallon* v. *Kelehar,* 16 Hun, 266; *Flannery* v. *Sahagian,* 45 N. Y. St. Rep., 598.) The second award would be void. (*Bayne* v. *Morris,* 1 Wall., 97.) The first or original award was approved by Everson. There is no explanation as to the making of the subsequent papers.

In the proofs of loss on the Lock street property the amount claimed was $4,914.76. The original award was $4,877.76.

It must, I think, be held that neither of the two additional papers constituted a valid additional award, and that the evidence is not sufficient to justify the finding that they, or either of them, can be deemed a part of the original award. It follows that the recoveries upon the policies on the Lock street property must be based on the loss at $4,877.76. This involves a reduction of the recovery on each of those four policies from the sum of $1,330.67, and interest from March 29, 1889, to the sum of $1,219.44, with interest from the same date.

No sufficient reason is apparent for any other interference with the judgments appealed from.

HARDIN, P. J., and MARTIN, J., concurred.

The judgments in the cases against the London Assurance Corporation, the Liberty Insurance Company of New York city, the Fire Association of Philadelphia, Pennsylvania, and the Fire Insurance Association of London, England, are affirmed, with costs. The judgments in the cases against the Westchester Fire Insurance Company, the New York Bowery Fire Insurance Company, and the Williamsburgh City Fire Insurance Company, are modified by reducing the recovery in each case to the sum of $1,219.44, with interest from March 29, 1889, and as modified affirmed, without costs of the appeal to either party. The judgment in the case against the Phœnix Insurance Company is modified by reducing the recovery on the policy, dated November 20, 1888, to the sum of $1,219.44, with interest from March 29, 1889, and as modified affirmed, without costs of the appeal to either party.