## BALKAM v. WOODSTOCK IRON COMPANY.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF ALABAMA.

No. 329.   Argued March 28, 29, 1894.—Decided May 26, 1894.

An action of ejectment was brought in a state court of Alabama, in which the parties were the same, the lands sought to be recovered were the same, the issues were the same and the proof was the same as in this action. That case was taken to the Supreme Court of the State, and it, was there held that, whilst the plaintiffs and those whom they represented had no legal right to bring an action of ejectment pending a life estate in the premises, yet, in view of a probate sale of the reversionary interest and the recorded title thereto, and of the payment of the purchase price into the estate and its distribution among the creditors of the estate, the heirs had an equitable right to commence a suit to remove the cloud on the title which the probate proceedings created; and, inasmuch as they had failed to do so during twenty years, their right of action was barred under the doctrine of prescription. The statutes of Alabama provide that two judgments in favor of the defendant in an action of ejectment, or in an action in the nature of an action of ejectment, between the same parties, in which the same title is put in issue, are a bar to any action for the recovery of the land, or any part thereof, between the same parties or their privies, founded on the same title. The plaintiffs, availing themselves of this statute, brought this suit. *Held*, that, although the judgment of this court might be, if the question were before it for original consideration, that the bar of the statute would only begin to run upon the death of the holder of the life estate, yet that, the court of last resort of the State having passed upon the

questions when the bar of the statute of prescription began to be opera-
tive, and when the parties were obliged to bring their action, whether
legal or equitable, those questions were purely within the province of
that court, and this court was bound to apply and enforce its conclusions.

THE plaintiffs in error, as heirs of Samuel P. Hudson, brought two suits of ejectment for the recovery of certain lands. By agreement, the suits were consolidated and tried as one. After judgment on verdict in favor of the defendants, the case was brought here by writ of error.

Samuel P. Hudson, a resident of Calhoun County, in the State of Alabama, died intestate in August, 1863. At the time of his death he was seized of certain parcels of land in Calhoun County. He left a widow, Kezia A. Hudson, and several children, some of whom were minors. James F. Grant was appointed administrator of his estate by the probate court.

The widow petitioned the court for allotment of dower, and after due proceedings, in accordance with the laws of Alabama, her right of dower in the land in controversy was duly recognized and decreed.

In January, 1866, the administrator petitioned the court to order the sale of the real estate, saving the rights of dower of the widow, in order to pay debts, alleging the insufficiency of the personalty.

To this petition the widow and heirs were made defendants, and a guardian *ad litem* was appointed to represent the minors. A day was set for the hearing; all parties, including the minors' guardian, were duly notified, and a commission was issued for the examination of certain witnesses. The caption of the interrogatories to be addressed to these witnesses recited that the answers, when taken, " were to be used in evidence before said court on the hearing of and in behalf of the application made by James F. Grant, administrator of said estate, to sell land belonging to said estate." The witnesses named appeared before the commissioners appointed by the probate court and testified as to their knowledge of the land and of the heirs and distributees, and swore that, to the best of their information and belief, the

personal property of the estate was insufficient to pay the debts. The caption to the answers of each of the witnesses recites that they were sworn and examined by virtue of a commission issued out of the probate court of Calhoun County, Alabama, "in the matter of the estate of Samuel P. Hudson, deceased, the application of James F. Grant to sell land." The certificate of the commissioners attests "the examination of the witnesses in the above-stated matter of Samuel P. Hudson, deceased, on the application of J. F. Grant, Administrator, to sell land." The answers of the witnesses under the commission were returned to the probate court, and were filed by the judge thereof on the 10th of February, 1866. On the 15th of February, 1866, the day set for the hearing of the petition, the following order was entered:

"Probate Court for Calhoun County, Alabama.

"FEBRUARY 15th, A.D. 1866.

"This being the day set by a former order of this court, the 9th day of January, A.D. 1866, to hear and determine upon the petition of James F. Grant, administrator of the estate of Samuel P. Hudson, deceased, for the sale of the following-described lands belonging to said estate for the purpose of paying the debts of the said estate, to wit :

[Here follows a description of the real estate.]

\*         \*         \*         \*         \*

"And comes the said Grant and prays that his said petition and application for the sale of the above-described land be heard and determined at this term of the court, and it appearing to the satisfaction of the court that notice of the filing of said petition and of the day set for the hearing of the same had been given according to law, thereupon the court proceeds to hear and determine upon the facts of the said petition ; and comes into court L. W. Cannon, as the guardian of the minor heirs of said decedent, and denies each and all of the allegations of said petition, and thereupon said administrator introduces witnesses to sustain the same, and, after hearing all the testimony in the case, the court is of opinion

that the allegations of said petition are fully sustained by the evidence in the case.   It is therefore ordered and decreed by the court that the above-described lands, as belonging to said estate, be, and the same are hereby, directed to be sold for the payment of the debts of said estate, subject, however, to the widow's dower interest in said lands.

"It is further ordered that said lands be sold on a credit of one and two years, with interest from the date of sale.

"It is further ordered that said administrator, after advertising the sale of said lands in the Jacksonville Republican for three weeks, giving the time, place, and terms of sale, proceed to sell the said lands known as the Steam Mill tract, at Blue Mountain, and the Nunnelly place and town lots, before the court-house door, in the town of Jacksonville, Ala.

*          *          *          *          *

"It is ordered that said land be sold at public auction to the highest bidder, and that said administrator secure the purchase-money for said lands by taking notes with two good solvent sureties.

*          *          *          *          *

"A. Woods, <i>Judge of Probate.</i>"

At the sale thus ordered, the widow, Kezia A. Hudson, purchased the reversionary interest in the lands in controversy for $450.  The administrator duly reported the sale to the probate court, stating in his report that he had adjudicated to Kezia A. Hudson the "remainder after the demands of the dower interest in the land," which had been set apart as Mrs. Hudson's dower.   This report was sworn to by the administrator, and on May 15, 1866, an order was passed approving the same, and ordering it to be filed.   Afterwards the administrator made a formal deed to the widow, which reads as follows:

"Whereas I, James F. Grant, administrator of all and singular the goods and chattels, rights, and credits of the estate of Samuel P. Hudson, deceased, did as said administrator apply — and obtain an order from the probate court of Calhoun County, State of Alabama, <i>for an order</i> to sell the

real estate of which the said Samuel P. Hudson died seized and possessed, subject, however, to the widow of said deceased's right of dower; and whereas said widow did apply to said court of probate to have dower allowed to her out of said lands, and prior to the time said sale was brought there was set off and allowed to Mrs. Kezia A. Hudson, widow of said deceased, the following lands, to wit:

[Here follows a description of the lands.]

\*         \*         \*         \*         \*

"Now, know ye that, for and in consideration of the foregoing premises and the payment of the said sum of four hundred and fifty dollars, to me in hand paid by the said Kezia A. Hudson, the receipt of which is hereby acknowledged, I, as such administrator, have this day bargained and sold, and do by these presents bargain, sell, and convey unto the said Kezia A. Hudson, her heirs and assigns forever, all the remaining interest or right which there is of the said lands; to have and to hold to the said Kezia A. Hudson, her heirs and assigns forever, but I am in no event personally liable upon the covenants of this deed.

"In witness whereof I have hereunto set my hand and affixed my seal this 9th day of April, A.D. 1866.

"J. F. GRANT,   [SEAL.]
"*Administrator of Samuel P. Hudson, Deceased.*"

Upon which deed are the following endorsements, to wit:

"STATE OF ALABAMA, }
    *Calhoun County.* }

"I, Alexander Woods, judge of probate in and for said county, hereby certify that J. F. Grant, administrator of the estate of S. P. Hudson, deceased, who is known to me, acknowledged before me on this day that, being informed of the contents of the conveyance, he executed the same voluntarily as such administrator on the day the same bears date.

"Given under my hand this 9th day of April, A.D. 1866.

"A. WOODS, *Judge of Probate.*"

" Filed in office April 9th, 1866, and recorded April 16th, 1866, and that the deed had on it fifty cents revenue stamps, this 16th day of April, A.D. 1866.

A. WOODS, <em>Judge of Probate.</em>

" THE STATE OF ALABAMA, }
    *Calhoun County.* }

" I, E. F. Crook, judge of the court of probate and *ex officio* clerk of said court, in and for said county and State, do hereby certify that the foregoing three pages, inclusive, contain a true and correct transcript of deed of J. F. Grant, administrator of estate of S. P. Hudson, deceased, to Kezia A. Hudson, as fully and as completely as appears of record in my office.

" Given under my hand at office, in the town of Jacksonville, Alabama, on this the 15th day of August, A.D. 1888.

" E. F. CROOK,<br>
" <em>Judge of Probate and ex officio Clerk of said<br>
Court, Calhoun County, Ala.</em>"

On May 9, 1866, the administrator prayed the court that the estate of his intestate might be declared insolvent, and after due hearing and notice to all parties in interest, the prayer was granted.

Mrs. Hudson, the purchaser of the reversionary interest, lived at the time of the sale, with her children, on the lands bought by her. Subsequently she conveyed them to the firm of Sherman & Boynton, who in turn conveyed them to H. L. Jeffers, and he again to the Woodstock Iron Company, one of the defendants in error, which latter sold a portion of the lands to the Anniston Land and Improvement Company, and that corporation conveyed it to the Anniston City Land Company, and, as was admitted, all the purchasers went into possession at the time of their respective conveyances and held the lands openly and unequivocally as owners thereof. The property, since the sale, has become very valuable, a portion of it being within the municipal limits of the town of Anniston and the other portion adjacent thereto. Mrs. Hudson died June 26, 1879.

On June 28, 1887, action was brought by the heirs of Samuel P. Hudson in the Circuit Court of Calhoun County to recover the lands which had been sold in the probate proceedings. In that suit the parties were the same, the lands were the same, the issues were the same, and the proof was the same as in the case now before us. Judgment was given in the Circuit Court in favor of the plaintiffs. This judgment, on appeal to the Supreme Court of Alabama, was reversed, on the ground that whatever rights the plaintiffs might have originally possessed were barred by prescription. *Woodstock Iron Co.* v. *Fullenwider*, 87 Alabama, 584, 587.

Section 2714 of the Code of Alabama provides: "Two judgments in favor of the defendant in an action of ejectment, or in an action in the nature of an action of ejectment, between the same parties, in which the same title is put in issue, is a bar to any action for the recovery of the land, or any part thereof, between the same parties or their privies, founded on the same title." Availing themselves of this provision of the Alabama law, the plaintiffs thereupon brought these suits in the Circuit Court of the United States for the Northern District of Alabama. As before stated, the parties, plaintiff and defendant, are the same, the issues are the same, and the proof is the same as in the case finally decided by the Supreme Court of the State. Under instructions from the court there was a verdict for the defendants. The instructions will be found reported in 43 Fed. Rep. 648. The facts were admitted below, and therefore the issues presented are altogether questions of law, and were all reserved by bill of exception taken during the trial below.

*Mr. J. A. W. Smith* for plaintiffs in error.

*Mr. J. J. Willett* and *Mr. John B. Knox* for defendants in error. *Mr. John M. McKleroy* was on their brief.

MR. JUSTICE WHITE, after stating the case, delivered the opinion of the court.

The plaintiffs rest their case upon an attack upon the pro-

bate proceedings, which they assert to be absolutely void, 1st, because the proof as to the necessity of the sale was not " taken by deposition, as in chancery cases ; " and, 2d, because there was no order of the court authorizing the administrator to make a deed of the property to the purchaser. The first contention is based upon the language of the decree of sale, which is as follows : " And thereupon said administrator introduces witnesses to sustain the same, and after hearing all the testimony in the case, the court is of opinion," etc. ; and it is urged that this statement, " the administrator introduces witnesses," necessarily imports that depositions were not " taken as in chancery cases," according to the requirement of the Alabama statute.

We are also told that the depositions which were ordered to be taken by the Probate Judge for the purpose of the inquiry, and which when taken were filed by him and constituted part of the probate record, cannot be considered, because the opinion makes no reference to them, and, therefore, we must presume that they do not exist ; and the contention as to the deed is that it furnishes no evidence of title, because there was no specific order of the court to make it, although the sale was reported to the court and by it confirmed, and although the deed, when made, was returned to the probate court, certified by the judge, and by him duly put of record.

These very technical contentions are in conflict with the elementary rules by which the sanctity of probate proceedings are upheld, and are based on the terms of an Alabama statute, to which, we are told, a construction has been given by the courts of that State, which, however narrow and technical, is binding upon us.

The following provisions are found in the Alabama Code :

" 2612 (3223). Civil suits must be commenced, after the cause of action has accrued, within the periods prescribed in this chapter, and not afterwards."

" 2614 (3225). Within ten years. 1. . . .

" 2. Actions for the recovery of lands, tenements, hereditaments, or the possession thereof, except as herein otherwise provided."

" 2624 (3236). If any one entitled to bring the actions enumerated in this chapter, or make an entry on land, or defence founded on the title to real property, be, at the time such right accrues, within the age of twenty-one years, or a married woman, or insane, or imprisoned on a criminal charge for any term less than for life, he or she shall have three years after the termination of such disability to bring suit, or make entry or defence ; but no disability shall extend the period of limitation so as to allow such action to be commenced, or entry or defence made, after the lapse of twenty years from the time the cause of action or right accrued; nor shall this exception extend to a married woman in respect to her separate estate."

We excerpt the following from the opinion of the Supreme Court of Alabama, in the case of *Woodstock Iron Co.* v. *Fullenwider :*

" The defendants, who are appellants in this court, contend, on the contrary, that all irregularities of sale and defects of title, under the admitted facts of the case, are cured by the presumptions arising from the lapse of twenty years, under the broad doctrine of prescription, now so thoroughly established in this State.

" The plaintiffs certainly had no right to sue in ejectment for these lands before the death of the widow, who was tenant for life, her possession, so far at least as concerns the legal title in the reversion, not being adverse or hostile to the heirs, during the continuance of such particular estate.

\*        \*        \*        \*        \*

" In considering this question, we shall regard the contention of the appellees as well taken, so far as to assume that the sale of the administrator conferred no *legal* title to the reversion on the widow as purchaser under the probate proceedings in March, 1866.

" Regarding the proceedings in the probate court as void at law for the reasons stated, what, we may inquire, were the equitable rights, if any, acquired under it by the purchaser ? This question has been fully settled by our past decisions. Where land of a decedent is sold by the probate court for the

payment of debts, or for distribution, and the proceeding is void for want of jurisdiction, or otherwise, and the purchase-money, being paid to the administrator, is applied by him to the payment of the debts of the decedent's estate, or is distributed to the heirs; while the sale is so far void as to convey no title at law, the purchaser nevertheless acquires an equitable title to the lands, which will be recognized in a court of equity. And he may resort to a court of equity to compel the heirs or devisees to elect a ratification or rescission of the contract of purchase. It is deemed unconscionable that the heirs or devisees should reap the fruits of the purchaser's payment of money, appropriated to the discharge of debts, which were a charge on the lands, and at the same time recover the lands. They are estopped to deny the validity of the sale, and at the same time enjoy the benefits derived from the appropriation of the purchase-money. And this principle applies to minors as well as adults. *Bland* v. *Bowie*, 53 Alabama, 152; *Bell* v. *Craig*, 52 Alabama, 215; *Robertson* v. *Bradford*, 73 Alabama, 116. See also *Ganey* v. *Sikes*, 76 Alabama, 421."

The court then proceeded to hold that, whilst the heirs of Hudson had no legal right to bring an action of ejectment pending the life estate, in view of the probate sale of the reversionary interest and the recorded title thereto, and of the payment of the price into the estate and its distribution among the creditors of the estate, th' heirs had an equitable right to bring an action to remove the cloud on the title which the probate proceedings created; and inasmuch as they had failed to do so during twenty years, their right of action was barred under the doctrine of prescription. We again quote:

"Here, then, was the capacity to sue in a court of equity, so as to sweep away a cloud on the title of the plaintiffs, and, by an offer to do equity, to have the equitable title of the defendants, acquired at the void sale, divested out of them by decree of a court of chancery. A failure to exercise this right for over twenty years is such *laches* as authorizes the inference that the right to do so is barred in any one of the

modes in which that result may be effected.  If the only existing right of action on the plaintiffs' part were at law — if his only *laches*, or slumbering on his rights, consisted in his failure to sue at law — then, as we have often said, 'the only fact open to inquiry, in such cases, would be the character of defendants' possession, either in its original acquisition, or in its continued use, as being, on the one hand, permissive and in subordination, or, on the other, hostile and adverse.'  *Long* v. *Parmer*, 81 Alabama, 384; and cases cited on p. 388.  But the *laches* here imputed to the plaintiffs is the fact of having allowed the probate court proceedings to remain unassailed for over twenty years — proceedings under which, though void at law, a good equitable title to the reversion had been acquired, accompanied with possession and claim of ownership, on the part of the purchaser and her sub-vendees, during the whole of this long period."

The conclusion of the Alabama court is assailed here on the ground that it is unsound in law.  Whilst, of course, as the statutes of the State of Alabama allow two actions in ejectment, the decree of the Supreme Court of Alabama does not constitute "the thing adjudged" in the case before us, we think the rule under which we follow state statutes of limitation and the construction of such statutes by the state courts compels us to treat the doctrine here announced as conclusive of the present case, so far as this court is concerned.  The whole subject was very fully reviewed by this court in the case of *Bauserman* v. *Blunt*, 147 U. S. 647.  There, through Mr. Justice Gray, we said:

"By a provision inserted in the first judiciary act of the United States and continued in force ever since, Congress has enacted that 'the laws of the several States, except where the Constitution, treaties or statutes of the United States otherwise require or provide, shall be regarded as rules of decision in trials at common law, in the courts of the United States, in cases where they apply.'  Act of September 24, 1789, c. 20, § 34, 1 Stat. 92; Rev. Stat. § 721.  No laws of the several States have been more steadfastly or more often recognized by this court, from the beginning, as rules of decision in the

courts of the United States, than statutes of limitations of actions, real and personal, as enacted by the legislature of a State, and as construed by its highest court. *Higginson* v. *Mein*, 4 Cranch, 415, 419, 420 ; *Shelby* v. *Guy*, 11 Wheat. 361, 367 ; *Bell* v. *Morrison*, 1 Pet. 351, 360; *Henderson* v. *Griffin*, 5 Pet. 151 ; *Green* v. *Neal*, 6 Pet. 291, 297–300 ; *McElmoyle* v. *Cohen*, 13 Pet. 312, 327 ; *Harpending* v. *Dutch Church*, 16 Pet. 455, 493 ; *Leffingwell* v. *Warren*, 2 Black, 599 ; *Sohn* v. *Waterson*, 17 Wall. 596, 600 ; *Tioga Railroad* v. *Blossburg & Corning Railroad*, 20 Wall. 137 ; *Kibbe* v. *Ditto*, 93 U. S. 674 ; *Davie* v. *Briggs*, 97 U. S. 628, 637 ; *Amy* v. *Dubuque*, 98 U. S. 470 ; *Mills* v. *Scott*, 99 U. S. 25, 28 ; *Moores* v. *National Bank*, 104 U. S. 625 ; *Michigan Insurance Bank* v. *Eldred*, 130 U. S. 693, 696 ; *Penfield* v. *Chesapeake &c. Railroad*, 134 U. S. 351 ; *Barney* v. *Oelrichs*, 138 U. S. 529.

"In *Patten* v. *Easton*, 1 Wheat. 476, 482, and again in *Powell* v. *Harman*, 2 Pet. 241, this court had construed a Tennessee statute of limitations of real actions in accordance with the decisions of the Supreme Court of the State, made since the first of those cases was certified up to this court, and supposed to have settled the construction of the statute. Yet in *Green* v. *Neal*, 6 Pet. 291, a judgment of the Circuit Court of the United States, which had held itself bound by those cases in this court, was reversed, because of more recent decisions of the state court, establishing the opposite construction."

Nor can the case before us be saved from the operation of the rule thus stated by the contention that the Supreme Court of the State of Alabama has misconstrued its statutes or has adopted a rule of limitation or prescription in conflict therewith. In *Leffingwell* v. *Warren*, 2 Black, 599, 603, Mr. Justice Swayne, speaking for the court, thus laid down the rule :

"The courts of the United States, in the absence of legislation upon the subject by Congress, recognize the statutes of limitations of the several States, and give them the same construction and effect which are given by the local tribunals. They are a rule of decision under the 34th section of the Judicial Act of 1789. The construction given to a statute of a

State by the highest judicial tribunal of such State is regarded as a part of the statute, and is as binding upon the courts of the United States as the text. . . . If the highest judicial tribunal of a State adopt new views as to the proper construction of such a statute, and reverse its former decisions, this court will follow the latest settled adjudications."

These views meet every point presented here and do not in any way conflict with *Burgess* v. *Seligman,* 107 U. S. 20, 32; *Carroll* v. *Smith,* 111 U. S. 556, 562; or *Gibson* v. *Lyon,* 115 U. S. 439. None of those cases involved the question of the conclusiveness on this court of the decisions of the courts of a State as to a statute of limitations and the bar created thereby. It may be that, if the question were before us for original consideration, we should hold that the right of the heirs to sue did not arise until after the death of the holder of the life estate, and therefore, that the bar of the statute would only then begin to run; but we are not at liberty to pass upon that question. When the bar of the statute of prescription, under the laws and decisions of the State of Alabama, began to be operative has been construed by the court of last resort of that State. Necessarily the determination of when the parties had a right to sue was a question concerning the construction when the prescription commenced to run, or when they were obliged to bring their action, whether legal or equitable. Those questions were purely within the province of the Supreme Court of Alabama. In deciding them it passed upon its own statutes of limitations or the doctrines of prescription as applied by it, and we are obliged to apply and enforce their conclusions.

To endorse the position of the plaintiffs in error, we should be compelled at the same time to disregard the elementary rules by which decrees of probate are sanctioned and upheld, on the ground of a technical construction which, it is asserted, we are compelled to adopt because of the decisions of the state court of Alabama, and to depart from the settled rule under which this court adheres to the decision of state courts of last resort in construing statutes of limitation or enforcing the doctrine of prescription. In other words, the success of the

plaintiffs' case depends upon our adhering to the rule by which we follow the construction of state courts in a state matter on the one hand and departing from it on the other.

*Judgment affirmed.*

MR. JUSTICE JACKSON, not having heard the argument, took no part in the decision of this cause.