## UNITED STATES v. CURTISS AEROPLANE CO. et al.

District Court, S. D. New York.

May 27, 1943.

478

**479**

Mathias F. Correa, of New York City (by Daniel M. Sandomire, of New York City), for plaintiff.

Spence, Windels, Walser, Hotchkiss & Angell, of New York City (by Kenneth M. Spence and Soia Mentschikoff, both of New York City), for defendants.

RIFKIND, District Judge.

The complaint alleges seven causes of action. Each is based upon the alleged breach of a separate contract of sale of Curtiss aeroplanes by defendant to the Imperial Russian Government. The United States sues as assignee under the Litvinoff Assignment of November 16, 1933. The contracts were all made in 1914 and 1915. The latest delivery date specified in any of the contracts was July 20, 1915. Action was commenced on April 9, 1941.

Defendant has moved for summary judgment pursuant to Rule 56, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, on the ground that all causes of action alleged are barred by the New York Statute of Limitations, § 48, New York Civil Practice Act.

■ Assuming that the contracts in litigation are New York contracts (and I shall hereinafter indicate why the assumption must be taken as fact *), it is not disputed that more than six years had elapsed between the time when the causes of action accrued and November 16, 1933, when the United States became the assignee of the claims. Consequently, it cannot be doubted that if at that time the claims were barred by the lapse of time, the United States took the claims subject to that infirmity, and that the immunity of the sovereign to the plea of the statute of limitations would not forfeit that defense. So it has been expressly held with respect to the Litvinoff Assignment in Guaranty Trust Co. v. Unit-

ed States, 1938, 304 U.S. 126, 141, 58 S.Ct. 785, 82 L.Ed. 1224. It may also be taken as established that the exemption of the United States and the states from the operation of statutes of limitation does not extend to foreign sovereigns, Id., 304 U.S. at page 133, 58 S.Ct. at page 789, 82 L.Ed. 1224, so that plaintiff's predecessor does not enjoy in this respect a status different from that of a private litigant. It is equally clear that in selecting the appropriate rule of limitations which governs this controversy we must have recourse to the law of New York. Guaranty Trust Co. v. United States, supra; Balkam v. Woodstock Iron Co., 1894, 154 U.S. 177, 14 S.Ct. 1010, 38 L.Ed. 953; Leffingwell v. Warren, 1862, 2 Black 599, 603, 17 L.Ed. 261; Tioga R. R. v. Blossburg & C. R. Co., 1873, 20 Wall. 137, 143, 22 L.Ed. 331; Bauserman v. Blunt, 1893, 147 U.S. 647, 654, 13 S.Ct. 466, 37 L.Ed. 316.

Clearly then, had nothing intervened, the claims alleged in the complaint could not withstand the plea of the statute of limitations. Something, however, has intervened.

## I. The 1922 Agreement.

On March 15, 1922, defendant and Russia, acting through Boris A. Bahkmeteff, its ambassador to the United States, entered into an "agreement", which, in its preamble, recited that Russia claimed that Curtiss was indebted to it in certain sums aggregating $1,050,000 and interest as a result of alleged breaches of the aforementioned contracts and that Curtiss claimed that Russia was indebted to it in certain sums by reason of said contracts and which provided further:

"1. Russia shall not commence an action against the company and the company shall not present a claim against Russia until after the expiration of two (2) years after the Government of Russia recognizes and accords full honor in Russia to passports issued by the Government of the United States to American citizens desiring to travel in Russia in connection with ordinary commercial enterprises * * *.

"2. In the event that after the expiration of such two year period Russia shall commence an action against the company or the company shall present a claim against Russia, the defendant party to such action or claim shall not plead or set up as a defense as a part of any statute of limita-

tions the period of time intervening between March 15, 1922 and the end of a period of five years following the expiration of such two year period."

Provision was also made for mode of appearance, examination of witnesses before commencement of actions and for other details.

It is conceded that full honor has been accorded by the Government of Russia to American passports since November 16, 1933. The question squarely presented for decision is the validity of paragraph 2 of the agreement.

The basis of the attack upon its validity is found in Section 10 of the New York Civil Practice Act, the relevant portion of which reads:

"§ 10. Application of article. The provisions of this article apply and constitute the only rules of limitation applicable to a civil action or special proceeding, except in one of the following cases:

"1. A case where a different limitation is specially prescribed by law or a shorter limitation is prescribed by the written contract of the parties".

The Civil Practice Act enacted in 1920 derived this provision from Section 414 of the Code of Civil Procedure, enacted in 1876, as Chapter 448 of the Laws of 1876.

■ On its face, this statute forbids the enforcement of the challenged agreement. That parties may abbreviate but may not extend the period of limitations, is its explicit direction. If they would abbreviate the period they must do so by contract and in writing.

■ It is difficult to imagine more explicit language for the expression of the state's policy. By means of this statute the New York legislature clearly expressed its intention that the benefit of the statute of limitations was not merely a private privilege but a public concern; that private consent was insufficient to postpone the bar imposed by statute; that a consensual arrangement to accelerate the bar was permitted but in such event the arrangement must rise to the dignity of a contract and that it be in writing. A mere written memorandum was insufficient for this purpose although such a writing might suffice to satisfy the requirements of Section 59 of the Civil Practice Act, [formerly Section 395 of the Code of Civil Procedure, derived from Section 110 of the Code of Procedure] as an acknowledgment. The statute, Section 10, Civil Practice Act, makes no distinction between contracts for the modification of the period of limitation made at or before the inception of liability and those made thereafter; but by necessary implication it forbids such contracts if made after the statutory period has fully run, since any further extension would amount to a lengthening of the statutory period.

■ However, no matter how clear and unequivocal the legislative mandate may appear and no matter how persuasive the argument derived from the statute might be in a state court, it is of little significance in a Federal court if there be judicial construction of the statute by the courts of the state. In the Federal court the construction given to the statute by the state courts must prevail. Balkam v. Woodstock Iron Co., 1894, 154 U.S. 177, 14 S.Ct. 1010, 38 L.Ed. 953.

■ In the absence of a decision by the highest court of the state, the Federal courts must observe the decisions of the lower courts and they are not at liberty to reject such decisions merely because they do not agree with their reasoning. Fidelity Union Trust Co. v. Field, 1940, 311 U.S. 169, 179, 61 S.Ct. 176, 85 L.Ed. 109.

■ Only where the evidence is convincing that the highest court of the state would depart from the rule announced by the inferior court may a Federal court disregard the decision of such inferior court.

This rule of decision compels a detour from the simple direction of the statute into a maze of decisions and dicta which sometimes appear to defy the statute, but most commonly seem to act in complete oblivion of the statute.

Before Section 414 was enacted as part of the Code of Civil Procedure in 1876, the law was not entirely settled. Four cases illustrate its position at that time. In Utica Ins. Co. v. Bloodgood, 1830, 4 Wend., N.Y., 652, an action was brought on a promissory note and the defense of the statute of limitations was interposed. It appeared that shortly before the statute had run the defendant had signed a stipulation: "I hereby agree not to plead the statute of limitations in a prosecution for any balance that may be due on said note". It was held that the defendant was "estopped" by his

stipulation from availing himself of the statute of limitations.

Thirty-three years later the theory of estoppel satisfied only one of the three judges who heard Rowe v. Thompson, 1863, 15 Abb.Prac., N.Y., 377. In answer to the plea of the statute of limitations, the plaintiff proved that he had signed and delivered a paper to the defendant at the request of the latter which read: "We, the creditors or Elmor Thompson, agree not to sue or molest him for his indebtedness, or the debts owing to us by him, for two years from the 1st of February". Brady, J., rejected the defense of the statute of limitations on two distinct grounds.

First, he said, "The agreement which he made with the plaintiff is an estoppel in pais as to the two years. The plaintiff acted upon it, and he would be injured by allowing it to be disregarded."

Second, he construed the writing as an acknowledgment of the debt within the provision of § 110 of the Code of Procedure and held that the mention therein of defendant's name satisfied the statutory requirement that the writing be signed by the party to be charged.

Hilton, J., joined in the result but only on the second ground. Daly, J., dissented: "The effect of the judgment is to declare that if the creditor agrees for a specified time not to sue the debtor, that time shall not be taken as any part of the six years. * * * It is declaring that a disability— not among those which the statute enumerates—shall, during its continuance, suspend the running of the six years. This a court has no power to do".

Since the rather transparent device of sustaining ineffective extensions of the statute of limitation by treating them as acknowledgments of debt under § 110 of the Code of Procedure, § 395, Code Civ. Proc., § 59, Civil Practice Act, is one frequently employed, it is useful to indicate at this point that in the case at bar plaintiff does not contend that the challenged agreement constitutes such an acknowledgment; and, indeed, such a contention could not be successfully advanced and even if successfully advanced, would not avail under the circumstances.

The doctrine of estoppel won new judicial approval in Brookman v. Metcalf, 1867, 34 How.Prac.,N.Y., 429, under circumstances where it was clearly the "fair" thing to do. Plaintiff was the holder of two notes made by defendant. While an appeal from a judgment on the first note was pending and when the second note had not yet been barred by limitations, the defendant orally promised the plaintiff that if he would forbear from suing on the second note he would pay it if the appeal on the first note was determined in favor of the plaintiff. The condition was met. In an action on the second note, defendant pleaded the statute of limitations. It was held that, "upon the doctrine of equitable estoppel *. * * the defendant ought not to be allowed to disregard his engagement and set the statute up as a defense".

This brings us to Shapley v. Abbott, 1879, 42 N.Y. 443, 1 Am.Rep. 548, the leading New York authority on the subject. The action there was on a due bill 'and was commenced more than six years after the cause of action had accrued. To avoid the statute of limitations, the plaintiff alleged, and at the trial proved, that before the bill was outlawed, the defendant orally agreed that he would not plead the statute of limitations. The jury's verdict was for the plaintiff. In an opinion by Earl, Ch. J., one of the great judges of the Court of Appeals, it was held that the verdict could not stand. The basis of the decision was the broad one of public policy. He said, "A party may, undoubtedly, without trenching upon public policy, waive the defense of usury, or of the statute of frauds, or of the statute of limitations, by omitting to set up the defense when sued. And he may waive his statute exemption by turning out exempt property when the officer comes with the execution; but no case has occurred to me in which a party can, in advance, make a valid promise that a statute founded in public policy shall be inoperative". He rejected the doctrine of estoppel as inapplicable to such promises. As to Utica Ins. Co. v. Bloodgood, supra, he said: "It was wholly unnecessary to resort to the doctrine of estoppel in pais, as the stipulation, beyond all question, contained a sufficient acknowledgment of the debt to take it out of the statute". Shapley v. Abbott, 42 N.Y. at page 454, 1 Am.Rep. 548.

The learned editor of a note in 30 Columbia Law Review, 383 (1930), distinguishes between jurisdictions which stress the public benefit aspect of the statute of limitations and those which stress the aspect of individual protection. A candid reading of § 414 of the Code of Civil Procedure, enacted shortly after the Shapley decision,

leaves no room for doubt that the New York legislature intended to put that state into the first category.

Only three decisions of the court of appeals throw any direct light on the development of the rule since the statute was enacted. Wilkinson v. First Nat. Fire Ins. Co., 1878, 72 N.Y. 499, 28 Am.Rep. 166; Woods v. Board of Supervisors, 1893, 136 N.Y. 403, 32 N.E. 1011; Matter of Gould, 1940, 282 N.Y. 132, 25 N.E.2d 877.

In the Wilkinson case, the action was brought upon an insurance policy which contained a twelve month limitation upon the institution of suit. "It is well-settled", said the court, "that the parties to a contract may provide for a *shorter* limitation to actions thereon than that fixed by the general law. Such an agreement is not expressly or impliedly prohibited by the general statute of limitations, and is consistent with the policy upon which statutes of limitation are founded". (Italics supplied).

In Woods v. Board of Supervisors, supra [136 N.Y. 403, 32 N.E. 1012], the action was commenced more than six years after the cause of action had accrued. Before the statute had run, the Board of Supervisors passed resolutions in which they expressly stipulated and agreed not to interpose the defense of the statute of limitations. The defense was interposed and the court held that the defense did not avail. Said the court: "This would seem to be a writing signed by the party to be charged, and containing a sufficient acknowledgment of the debt, and a promise to pay the same, within the meaning of the Code." The court cited § 395, Code Civ.Proc., but not § 414. Shapley v. Abbott was also cited without expression of disapproval.

The third relevant decision of the court of appeals is Matter of Gould, supra, which reversed the order of the Appellate Division, Fourth Department, reported (1939) in 257 App.Div. 109, 12 N.Y.S.2d 664, 670. The claim was against the estate of an incompetent and the Appellate Division expressed its holding thus: "The present proceeding is one to ascertain the just claims of the creditors which the court and the committee promised to give attention as soon as funds were available and they were not available until after this proceeding had been instituted. So far as the proof goes the creditors acquiesced and presented no claims until the institution of this proceeding. The effect of this action on the part of the committee, which was sanctioned by the county judge, was to postpone the running of the Statute of Limitations. True, the agreement to postpone the running of the statute was not in writing but it was fully performed by the Goulds and the other creditors." Nowhere in the opinion was § 10 of the Civil Practice Act or its predecessor mentioned. The opinion relied upon the estoppel which it found in the "implied agreement of the committee to adjudicate the claims as soon as the estate was in funds". Two judges dissented.

One of the questions certified to the Court of Appeals was: "Was the claim of Norman J. Gould against Edward B. Gould, an incompetent person, or the right to file or prosecute a claim against Edward B. Gould, barred by the Statute of Limitations?" This question was answered in the affirmative. However, the court did not · in its opinion either approve or reject the law pronounced by the court below. It rested its reversal on the proposition that the record disclosed no evidence to support the claimant's contentions.

I believe it is fair summary that the Court of Appeals has not repudiated Shapley v. Abbott and has said nothing affirmatively to discredit the plain meaning of § 10, Civil Practice Act. Neither, however, has it reaffirmed its allegiance to Shapley v. Abbott. Such express rejection or reaffirmation would have been particularly helpful in view of the wide departures from that decision reflected in the subsequent decisions of the intermediate and lower courts. The vagueness introduced into the law by these decisions, to which reference will be made, is well stated by so careful a judge as Justice Shientag of the New York Supreme Court, who wrote in Anglo California Nat. Bank v. Klein, 1936, 162 Misc. 898, 296 N.Y.S. 191, 202: "A waiver of the statute of limitations which is executed *before the inception of liability* may not be valid with respect to a transaction that has all its contacts in New York. Shapley v. Abbott, 42 N.Y. 443, 1 Am.Rep. 548; Watertown Nat. Bank of Watertown, New York v. Bagley, 134 App.Div. 831, 119 N.Y.S. 592; Crocker v. Ireland, 235 App.Div. 760, 256 N.Y.S. 638; Mutual Life Ins. Co. v. United States Hotel Co., 82 Misc. 632, 144 N.Y.S. 476; St. Andrews Parish v. Gallagher, 121 Misc. 167, 200 N. Y.S. 590. These cases are persuasive authority, although none of them is a decisive holding on the point, that the rule in New

York makes such waivers ineffective". (Italics supplied) § 10, Civil Practice Act, is noticeably absent from his list of citations.

What of agreements extending the statutory period executed after the inception of liability? First, it should be noted again that the statute makes no such distinction between agreements made at or before the inception of liability and those made thereafter. The case generally credited with introducing the distinction into New York law is Watertown Nat. Bank v. Bagley, Fourth Department, 1909, 134 App.Div. 831, 119 N.Y.S. 592, 596. In that case the court, obiter, said: "Probably an agreement, made at the inception of the liability, to the effect that the statute of limitations will never be interposed as a defense, would be flying in the face of the statute." The court made no reference to the precise identity of the statute intended. Nowhere did it cite § 414, Code Civ. Proc.; nor is it clear that it meant that section since the statute it had under review was not the general statute of limitation. The action was one to enforce a statutory liability of directors to creditors of a corporation for failure to publish certain corporate statements. The directors' failure to perform that duty occurred in January, 1899. The statute provided a three year period of limitations. On April 16, 1901, the statute imposing the liability was repealed with the proviso that actions might be instituted thereunder within six months from the date of repeal. On July 23, 1901, the corporation then being in receivership, the parties entered into a written agreement which provided, in part, as follows: "Now, therefore, in consideration of the said Watertown National Bank holding said claim until the receivership of the E. S. Stiles Press Company is closed without taking any action thereon, we, the undersigned, hereby waive any defense by way of said statute of limitations". Id., 134 App.Div. 833, 119 N.Y.S. 595.

The action was commenced on September 14, 1908, eighteen months after the receivership was closed. It was urged that the waiver of the statute of limitations for all time was violative of public policy. That objection the court overruled. It should be noted that the court cited Utica Insurance Company v. Bloodgood, supra, in support of its conclusion; but I have already adverted to the comment of the Court of Appeals in the Shapley case that the decision of the Utica case must be supported on § 395, Code Civ.Proc., as an acknowledgment of debt and that the reasons assigned by the court for its decision must be rejected. In the Watertown case the court further cited Woods v. Supervisors, supra. In that case, as already indicated, the waiver of the statute was supported entirely by reference to § 395.

It is, of course, true that § 414, Code Civ. Proc. did not apply to the six month period of grace involved in the Watertown case; and, indeed, Justice Andrews (subsequently Judge Andrews of the Court of Appeals), who tried the case below, treated this provision not as a statute of limitations but as a condition precedent, open to waiver, 62 Misc. 380, 383, 116 N.Y.S. 772.

Since § 414 was in no wise involved, whatever was said by the court which seems to bear upon it was, of course, dictum. And when the court made the generalization: "The period [of limitations] is fixed arbitrarily by the Legislature. The parties *may extend or shorten* the period, if the contract is founded upon a good consideration and is reasonable" (italics supplied), it is manifest that the court did not have § 414 before it; otherwise, some explanation would have been vouchsafed for such flight in, and collision with, the face of the statute.

Since this case is the chief reliance of plaintiff, I summarize my views of it thus: The opinion does not profess to construe § 414 of the Code of Civil Procedure nor the general statute of limitations. If we extract the holding of the case from the dicta in which it is imbedded it does not offend the plain meaning of the statute nor of the rule of Shapley v. Abbott. The dicta do support plaintiff's view but these are necessarily of inferior force and do not command acceptance in the federal court when these are in conflict with the views of the Court of Appeals.

I do not understand that the Supreme Court's admonition, that we accept the rule laid down in the lower state courts in applying local law, to mean that we must give preference to a later dictum of the lower court over the earlier holding of the highest court of the state. Matter of Sanford, 1916, 95 Misc. 3, 160 N.Y.S. 209; Andrews v. Cosmopolitan Bank, 1918, 183 App.Div. 787, 171 N.Y.S. 875; and Matter of Williams' Estate, 1923, 121 Misc. 54, 20 N.Y.S. 222, follow in the footsteps of the Watertown case. Not one of them cites

§ 414 of the Code of Civil Procedure or § 10 of the Civil Practice Act, and at least the Andrews case can be explained by reference to § 395 of the Code of Civil Procedure, § 59 Civil Practice Act, and justified on the reasoning employed by the Court of Appeals in Woods v. Supervisors, supra.

Of course, the language of the Watertown case has fathered many dicta. Smith v. Wagner, 1919, 106 Misc. 170, 174 N.Y.S. 205; Dorff v. Taya, 1920, 194 App.Div. 278, 185 N.Y.S. 174; Anderson v. Fidelity Co-operative Fire Insurance Co., 1921, 116 Misc. 679, 190 N.Y.S. 548. None of these cases involves a consideration of the question and only the last of these cites § 414 of the Code of Civil Procedure. Mutual Life Ins. Co. v. United States Hotel Co., 1913, 82 Misc. 632, 144 N.Y.S. 476; Crocker v. Ireland, 1932, 235 App.Div. 760, 256 N.Y.S. 638; and Pine v. Okoniewski, 1939, 256 App.Div. 519, 11 N.Y.S.2d 13, all hold invalid an agreement, made at the inception of liability, to waive the statute of limitations. None of them holds valid such an agreement if made after the inception of liability. See 45 Harvard Law Review 592.

That the New York courts do not accept the view of the Watertown case, that the period of limitations is subject to the regulation of the parties, both to shorten and to lengthen it, is evident from Brandyce v. Globe & Rutgers Fire Ins. Co., 1929, 252 N.Y. 69, 71, 168 N.E. 832, 833. "The parties to a contract of insurance may provide for a shorter limitation of actions than that provided in the general Statute of Limitations". § 10, Civil Practice Act is cited. This view has been accepted in the Fourth Department which decided the Watertown case. See Howe v. Mill Owners' Mut. Fire Ins. Co., 1934, 241 App.Div. 336, 338, 271 N.Y.S. 639; and cf. the earlier case of Dorff v. Taya, First Department 1920, 194 App.Div. 278, 281, 185 N.Y.S. 174, 177, which declares that: "It is, of course, competent for parties to a contract to establish a shorter or different limitation to the right of action thereunder than that given by statute."

In trying to ascertain the law of New York with respect to this question and in weighing the effect to be given to the lower court dicta it is proper, also, it seems to me, to consider that the Court of Appeals does not share the hostility of some of the lower courts to the defense of the statute of limitations.

On the contrary, the Court of Appeals regards it as a meritorious defense, in itself serving a public interest. Guaranty Trust Co. v. United States, 1938, 304 U.S. 126, 136, 58 S.Ct. 785, 82 L.Ed. 1224, and the New York cases therein cited: Brooklyn Bank v. Barnaby, 1910, 197 N.Y. 210, 227, 90 N.E. 834, 27 L.R.A.,N.S., 843; Schmidt v. Merchants Despatch Transp. Co., 1936, 270 N.Y. 287, 302, 200 N.E. 824, 104 A.L.R. 450. The difference in attitude is visible in Van Ness v. Kenyon, 1913, 208 N.Y. 228, 101 N.E. 881, Ann.Cas.1914D, 221, when compared to such cases as Strong v. Smith, 1933, 149 Misc. 80, 266 N.Y.S. 745, or the lower court decision in Crocker v. Ireland, 1931, 141 Misc. 418, 252 N.Y.S. 631, reversed 235 App.Div. 760, 256 N.Y.S. 638.

The rule announced by the Supreme Court is that: "Where an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise". West v. American Tel. & Tel. Co., 1940, 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139, 132 A.L.R. 956. See also Six Companies v. Joint Highway District, 1940, 311 U.S. 180, 188, 61 S.Ct. 186, 85 L.Ed. 114; Stoner v. New York Life Ins. Co., 1940, 311 U.S. 464, 467, 61 S.Ct. 336, 85 L.Ed. 284; Fidelity Union Trust Co. v. Field, 1940, 311 U.S. 169, 177, 61 S.Ct. 176, 85 L.Ed. 109.

The instant case does not depend upon diversity of citizenship; but I see no reason why a different standard for ascertaining state law should, under the circumstances, apply.

I believe the evidence is convincing that the Court of Appeals would not follow the dictum of the Watertown case and would give full effect to the statute and thus render the agreement being canvassed invalid. In considering the evidence which leads to this conclusion it seems to me that we may examine the reasoning which leads to the contrary result, and finding it wanting, assign that, too, as additional proof of the prophesied action of the highest court of the state. I am aware that the Supreme Court has ruled that mere disagreement by the federal court with the reasoning adopted by a state tribunal is insufficient ground for the rejection of the rule announced by the state court. But when we are dealing with

dictum, even oft repeated dictum, when there is other evidence persuasively pointing to a contrary result, then I suggest that the argument of logic may also be advanced as a make-weight.

The only reason I have discovered which has been assigned for the distinction between the agreements to extend the period of limitations made at the inception of liability and those made thereafter is that a lender at the time a loan is made has greater bargaining power than the borrower and is in a position to exact the promise. See 45 Harvard Law Review 592. If we assume that this is a valid reason for rejecting agreements made at the inception of liability, manifestly it affords no affirmative ground for validating such agreements if made thereafter. Moreover, actions for money loaned represent but a fraction of the matters that enter the stream of litigation. If it be argued that the statute's rationale is the inequality of bargaining power, we must conclude that the statute is inapplicable to torts, breaches of fiduciary duty, and all contract situations where at the time of contracting it is impossible to foretell who will be plaintiff and who defendant. That the statute has no such inherent limitation is evident not only from the generality of its language but from its conspicuous position as the first section in a codified Article dealing with limitations and the all-inclusive character of its title. § 10, Civil Practice Act.

■ I find, therefore, that the agreement to extend the statute of limitations was ineffective to accomplish its purpose by reason of the provisions of § 10 of the Civil Practice Act and § 414 of the Code of Civil Procedure. In coming to this conclusion I decide that the mentioned statute means what it says; that the rules of limitation prescribed by Article 2 of the Civil Practice Act govern this civil action unless "a shorter limitation is prescribed by the written contract of the parties". We have here a written contract of the parties but it prescribes a longer, not a shorter limitation. I reject the suggestion that the law of New York is that this statute must be construed to contain the additional qualification to the effect that the prohibition against adoption of a longer limitation by the parties does not apply after the inception of liability.

I conclude that the highest court of the state would not so construe the statute despite dicta in lower court decisions to the contrary. The evidence in support of my conclusion may be summarized briefly as follows:

1. Were the statute so construed it would in effect be limited solely to causes of action in contract since it is hardly to be supposed that the legislature contemplated the possibility of a tortfeasor entering into an agreement with his victim prior to the commission of the tort.

2. Were the statute so construed we would have no statutory regulation at all of arrangements modifying the period of limitations made after the attachment of liability since the words of the statute which prescribe that the arrangement must amount to a contract and be in writing would, of necessity, also apply only to agreements made at or before the inception of liability. In effect, we would have a situation where oral contracts extending the statute if made after the inception of liability, would be enforceable, and, by invoking estoppels, even oral extensions which do not rise to the dignity of a contract would likewise be valid. It seems clear to me that the statute is incapable of such fragmentation as would make the word "shorter" apply only to arrangements made at or before the inception of liability and the words "written contract" apply to all arrangements regardless when they are made.

3. The statute is clearly a codification of the rules announced in the Shapley case which held an extension of the period of limitation agreed upon after the inception of liability bad because (1) it was unsupported by consideration, i. e., it was not a contract; (2) it was not in writing; (3) it collided with the policy of the statute. § 414, Code Civ.Proc. was enacted shortly after the Shapley case was decided by the Court of Appeals.

4. There is no decision of the Court of Appeals which indicates the slightest departure from the rule laid down in the Shapley case and codified by the statute.

5. The Watertown case decided by an intermediate appellate court did not purport to construe § 414 and the opinion bears clear internal evidence, already noticed, that the court did not have the statute before it.

6. Not a single New York case in any court has been discovered which has expressly held that § 414 of the Code of Civil Procedure or § 10 of the Civil Practice Act countenances an agreement to ex-

tend the period of limitations if made after the inception of liability.

7. The decisions of the Court of Appeals express the view that the statute of limitations constitutes a meritorious defense founded on public interest.

8. Wilkinson v. First Nat. Fire Ins. Co., 1878, 72 N.Y. 499, 28 Am.Rep. 166, uses the precise language that parties to a contract may "provide for a shorter limitation to actions thereon than that fixed by the general law". This is in sharp contrast to the language of the Watertown case. To the same effect is Brandyce v. Globe & Rutgers Fire Ins. Co., 1929, 252 N.Y. 69, 71, 168 N.E. 832.

9. Woods v. Supervisors, supra, in rejecting the defense of the statute of limitations, was careful to found the rejection on the ground of a written acknowledgment under § 395 of the Code of Civil Procedure and not upon the theory that an extension of the statute after the inception of liability was valid.

The conclusion I have reached is in a sense harsh and "unfair". It disappoints the expectation of one of the parties. Such hardship frequently attends the effectuation of statutes of limitation, statutes of fraud, usury laws and the manifold rules which require obedience to public policy and the violation of private arrangement. To falter in the application of the rule because it appears to inflict a private hardship is to prefer a public injury.

Nor can the agreement be saved by recourse to a liberal conception of promissory estoppels. Indeed, it is difficult to improvise a situation in which the defense of limitations is met by the plea of an agreed extension where it is not possible to find the elements of forbearance by plaintiff in reliance on the extension. If that is sufficient to short-circuit § 10, Civil Practice Act, then the statute is a dead letter.

▪ The defendant has urged that regardless of the construction of § 10 of the Civil Practice Act, the agreement here under review must be stricken down because it provided for an indefinite extension which is per se unreasonable. This argument is necessarily footed on the assumption that reasonableness is a necessary ingredient of agreements regulating the period of limitations. The New York cases do not support such a doctrine. Defendant cites Sliosberg v. New York Life Ins. Co., 1927, 244 N.Y. 482, 155 N.E. 749. In that case the court said (244 N.Y. at page 496, 155 N.E. at page 754): "Statutes suspending, for an indefinite period, all proceedings to enforce a contract, have very generally been held to be unconstitutional". There is a vast difference between the power of the legislature to impair contracts by depriving them of enforceability for an indefinite period and the power of private persons to enter into agreements. Unless public policy intervenes parties are generally free to make unreasonable contracts. The cases which have passed on the reasonableness of contractual periods of limitation have dealt with contracts which were themselves, and regardless of the provision for a period of limitation, subject to the rule of reasonableness; such cases include insurance contracts and bills of lading. South & Central American Commercial Co., Inc., v. Panama R. Co., 1923, 237 N.Y. 287, 142 N.E. 666; Sapinkoff v. Cunard S. S. Co., 1930, 254 N.Y. 111, 172 N.E. 259.

The Watertown case contains a dictum which may be said to introduce the rule of reasonableness into contracts regulating periods of limitation but it is the merest suggestion unsupported by any authority or reasoning.

## II. Date of Accrual.

Defendant contends that regardless of the disposition made of the agreement concerning the period of limitation the first six causes of action are barred because they accrued before March 15, 1916, and hence were already under the ban of the statute of limitations when the agreement was made. The stipulated delivery date in each contract was earlier than March 15, 1916. In no case was timely delivery made. And if the stipulated date controls the accrual of the causes of action, then they were all barred by limitations before the agreement was made.

The breach of contract is alleged in the complaint in the following form:

"13. The Curtiss Aeroplane Company wrongfully and in violation of the said contract, wholly failed to perform the terms and conditions thereof in the following respects:

"a. The Curtiss Aeroplane Company failed to deliver the said boats, motors, accessories and spare parts to the agents of the Russian Government in the United

States within the time specified therefor in the said contract.

"b. The Curtiss Aeroplane Company failed to make the demonstration and tests provided for in the contract, of each or any of the said boats and motors.

"c. The Curtiss Aeroplane Company failed to deliver boats, motors, accessories and spare parts capable of the performance specified in the said contract, but on the contrary delivered boats, motors, accessories and spare parts which were defective in construction, workmanship, material and design.

"d. The Curtiss Aeroplane Company failed to replace unsatisfactory boats, motors, accessories and spare parts, within the shortest possible time or at any other time."

These paragraphs may be summarized as alleging delay, failure to make demonstrations, breach of warranty, and failure to replace the defective wares.

Plaintiff contends that the cause of action did not accrue until after March 15, 1916, and that in the intervening time the parties were continuing their efforts, one to receive and the other to effect complete performance under the contract. Whether the conduct of the parties prior to March 15, 1916, and shortly thereafter amounted to such efforts to remedy the situation, accompanied by assurances by defendant that it would fulfill the contract, as contended by plaintiff, or whether they were no more than attempts to negotiate a settlement of the controversy, as urged by defendant, presents an issue of fact which cannot be wholly resolved by the affidavits before me. True, the several contentions are based on documentary material, the meaning of which is essentially a question of law. But when consideration is given to the circumstance that much of the correspondence is written with telegraphic brevity, much of it in the Russian language, some of it by persons whose authority is not clearly established, and all of it at a time so long ago that in order fully to understand it one must immerse himself in the events of World War I and so reexperience the temporal climate in which the writings were created, it becomes clear that no satisfactory resolution of the issue of fact can be accomplished summarily on the affidavits alone.

This ground of defendant's motion must, therefore, fail unless there is merit in its contention that as a matter of law the date of the accrual of the causes of action was not deferred regardless of whether the conduct of the parties after the stipulated delivery date constituted efforts to perform or efforts to settle. It is my view that the defendant fails in such a contention. The New York cases do not supply a definitive answer but we have at least intimations that New York would follow the doctrine of Felt v. Reynolds R. F. E. Co., 1884, 52 Mich. 602, 18 N.W. 378. Woodworth v. Rice Bros. Co., 110 Misc. 158, 179 N.Y.S. 722, affirmed 193 App.Div. 971, 184 N.Y.S. 958, affirmed 1922, 233 N.Y. 577, 135 N.E. 925; 1 Williston on Sales, Second Edition, § 212-a note 26; Allen v. Todd, 1872, 6 Lans., N.Y., 222; Moore v. Maddock, 1929, 251 N.Y. 420, 167 N.E. 572, 64 A.L.R. 1189.

■ Efforts at settlement do not toll the statute. Downey v. Palmer, 2 Cir., 1940, 114 F.2d 116; Dawbarn v. Fleischmann, 1911, 146 App.Div. 57, 130 N.Y.S. 397.

■ I conclude, therefore, that defendant's motion for summary judgment cannot be rested upon the theory that before the 1922 agreement was made the statute had already barred the action. It should be made clear that I do· not decide that the statute had not run by that time. I merely decide that issues of fact are relevant to the determination of that question which cannot be summarily decided upon a motion.

### III. Miscellaneous.

■ Plaintiff suggests that defendant's motion must fail because it has omitted "to set forth the Russian law applicable to the complex questions". The complaint does not allege Russian law. It does not allege that Russian law governs the rights of the parties. It does not allege that the contracts, or any of them, were made in Russia. It does appear that defendant was a New York corporation; that each of the seven contracts called for delivery in New York City, transportation to Russia at the expense and risk of the latter, and demonstrations in Russia at expense and risk of defendant. These facts do not justify any conclusion other than that the New York rule of limitations shall govern.

488

The agreement under examination contains not only an extension of the period of limitations but a covenant not to sue until after a specified event. Such a disability is not one of those specified by statute as tolling the period of limitations; and in any event since it did not exist when the cause of action accrued it does not toll the statute. § 28, Civil Practice Act; Nathan v. Equitable Trust Co., 1929, 250 N.Y. 250, 165 N.E. 282.

The motion for summary judgment is granted.