Carol B. BRADWAY, and David E. Bradway, Plaintiffs–Appellants,

v.

The AMERICAN NATIONAL RED CROSS, Defendant–Appellee.

No. 91–8690.

United States Court of Appeals, Eleventh Circuit.

May 28, 1993.

George H. Connell, Jr., Parkerson, Shelfer and Connell, Decatur, GA, for plaintiffs-appellants.

Judith A. Powell, Kilpatrick and Cody, Atlanta, GA, Bruce M. Chadwick, Julia L. Erickson, Arnold and Porter, Edward L. Wolf, American Nat. Red Cross, Washington, DC, for defendant-appellee.

Before TJOFLAT, Chief Judge, BIRCH, Circuit Judge, and RONEY, Senior Circuit Judge.

TJOFLAT, Chief Judge:

Carol and David Bradway appeal the district court's decision to dismiss their suit against the American National Red Cross as barred by the Georgia statute of ultimate repose for medical malpractice actions. Because the Georgia Supreme Court has determined that this suit is an action for medical malpractice, not an action for "ordinary" negligence, we affirm the dismissal.

## I.

In April 1983, when she was twenty years old, Carol Bradway underwent reconstructive surgery for facial birth defects at the Emory University Hospital in Atlanta, Georgia. Mrs. Bradway received two units of whole blood by transfusion after surgery. The hospital obtained the blood from an American National Red Cross blood bank. The Red Cross had no direct contact with Mrs. Bradway.

In July 1988, Mrs. Bradway was admitted into a hospital after a diagnosis of pneumocystis. On July 19, 1988, Mrs. Bradway's doctor informed her that she had AIDS. On April 19, 1989, Mrs. Bradway and her husband David filed a complaint in Georgia state court alleging that Mrs. Bradway contracted AIDS during her 1983 transfusion. The Bradways sought compensatory damages, contending that the Red Cross was negligent in screening blood donors and in testing blood samples for the presence of HIV. They specifically asserted that the Red Cross, by not asking potential blood donors whether they were homosexuals, negligently failed to identify individuals possessing a high risk of being infected with the AIDS virus.

Pursuant to 28 U.S.C. §§ 1441, 1446 (1988), the Red Cross removed the Bradways' action to the United States District Court for the Northern District of Georgia.

The Red Cross then moved the district court to dismiss the Bradways' action as barred by Georgia's statutes of limitation and ultimate repose for medical malpractice suits. *See* O.C.G.A. §§ 9–3–70, 71 (1982 & Supp.1992).[1] The Bradways contended that the action was one for "ordinary" negligence, not medical malpractice. The district court concluded that under Georgia law "an action against a blood bank for the negligent collection and supply of human blood is an action for medical malpractice," and dismissed the case as barred by O.C.G.A. § 9–3–71.

The Bradways appealed this dismissal, arguing that the district court erred in classifying the case as a medical malpractice action rather than an "ordinary" negligence suit. Since this Court determined that the case turned on an unanswered question of Georgia law, we certified the following question to the Georgia Supreme Court:

> IS A SUIT ALLEGING THAT A NOT–FOR–PROFIT BLOOD BANK WAS NEGLIGENT IN COLLECTING AND SUPPLYING HUMAN BLOOD—INCLUDING SCREENING VOLUNTEER BLOOD DONORS AND TESTING BLOOD FOR THE PRESENCE OF HUMAN IMMUNODEFICIENCY VIRUS (HIV)—AN ACTION FOR MEDICAL MALPRACTICE AND THUS SUBJECT TO GEORGIA'S STATUTES OF LIMITATION AND REPOSE FOR MEDICAL MALPRACTICE ACTIONS, O.C.G.A. § 9–3–71?

*Bradway v. American Nat'l Red Cross*, 965 F.2d 991, 993 (11th Cir.1992). The Georgia Supreme Court answered our certified question in the affirmative. *Bradway v. American Nat'l Red Cross*, 426 S.E.2d 849, 850 (Ga.1993).

## II.

■ In certifying the question above to the Georgia Supreme Court, we reasoned that "resolution of this issue of Georgia law will determine whether the Bradways' suit was dismissed properly by the district court." 965 F.2d at 993. The Bradways contend, however, that it remains to be determined "when a cause of action accrues in a medical malpractice action for injury from a hazardous substance such as the AIDS virus." [2] They argue that the action did not accrue until the wrong was completed, i.e., when Mrs. Bradway became infected, and that "[i]t is a jury question as to when ... Carol Bradway became infected with the AIDS virus." We cannot agree.

The plain language of the statute indicates that the period begins on "the date on which the negligent or wrongful act or omission occurred." O.C.G.A. § 9–3–71(b). The relevant acts or omissions of the Red Cross—the "screening" of the blood, the release of the blood to the hospital—each occurred more than five years before this suit was filed.

■ Notwithstanding the language of the statute, the Bradways contend that the statute of repose runs from the time the wrong was completed. This legal theory, however, is not open to us. One week after responding to our certified question, the Georgia

---

1. O.C.G.A. § 9–3–70 states:

As used in this article, the term "action for medical malpractice" means any claim for damages resulting from the death of or injury to any person arising out of:

(1) Health, medical, dental, or surgical service, diagnosis, prescription, treatment, or care rendered by a person authorized by law to perform such service or by any person acting under the supervision and control of the lawfully authorized person; or

(2) Care or service rendered by any public or private hospital, nursing home, clinic, hospital authority, facility, or institution, or by any officer, agent, or employee thereof acting within the scope of his employment.

O.C.G.A. § 9–3–71 states, in pertinent part:

(a) Except as otherwise provided in this article, an action for medical malpractice shall be brought within two years after the date on which an injury or death arising from a negligent or wrongful act or omission occurred.

(b) Notwithstanding subsection (a) of this Code section, in no event may an action for medical malpractice be brought more than five years after the date on which the negligent or wrongful act or omission occurred.

(c) Subsection (a) of this Code section is intended to create a two-year statute of limitations. Subsection (b) of this Code section is intended to create a five-year statute of ultimate repose and abrogation.

2. All other issues previously raised by the Bradways have become irrelevant in light of the holding of the Georgia Supreme Court.

Supreme Court revisited the same statute of repose in *Wright v. Robinson,* 426 S.E.2d 870 (Ga.1993). In that case, the court determined that a medical malpractice plaintiff could not voluntarily dismiss a case and rely on the six-month renewal period to toll the statute of repose. The court reasoned:

> There is a distinct difference between statutes of limitations and statutes of repose. "A statute of limitations normally governs the time within which legal proceedings must be commenced after the cause of action accrues.... *A statute of repose, however, limits the time within which an action may be brought and is not related to the accrual of any cause of action. The injury need not have occurred, much less have been discovered.*"
>
> A statute of repose stands as an unyielding barrier to a plaintiff's right of action. The statute of repose is absolute; the bar of the statute of limitations is contingent. The statute of repose destroys the previously existing rights so that, on the expiration of the statutory period, the cause of action no longer exists.

426 S.E.2d at 871–72 (citations, footnotes omitted; emphasis added). The Georgia statute of repose for medical malpractice bars the Bradways' suit.[3]

### III.

Because we find that the Bradways' cause of action is barred by the Georgia statute of ultimate repose for medical malpractice actions, we affirm the decision of the district court to dismiss the suit.

AFFIRMED.

---

**3.** All statutes of repose prevent plaintiffs with otherwise legitimate claims from having those claims addressed by a court of law. In passing a statute of repose, a legislature decides that there must be a time when the resolution of even just claims must defer to the demands of expediency. *See Order of Railroad Telegraphers v. Railway Express Agency, Inc.,* 321 U.S. 342, 349, 64 S.Ct. 582, 586, 88 L.Ed. 788 (1944) ("[T]he right to be free of stale claims in time comes to prevail over the right to prosecute them."). While we may regret the application of the statute of repose to the instant facts, we cannot honestly avoid it.