CORRECTED

[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPT. 28, 2001
THOMAS K. KAHN
CLERK

_____

No. 00-14507
_____

D. C. Docket No. 99-03262-CV-BU-S

ELLEN GAYLE MOORE, on Behalf of Themselves
and all Others Similarly situated, FANNIE McCONNELL,
on Behalf of Themselves and all Others Similarly Situated, et al,

Plaintiffs-Appellees,

versus

LIBERTY NATIONAL LIFE INSURANCE COMPANY,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(September 28, 2001)**

Before BIRCH, WILSON and  FARRIS*, Circuit Judges.

_____

*Honorable Jerome Farris, U.S. Court of Appeals for the Ninth Circuit, sitting by designation.

WILSON, Circuit Judge:

Liberty National Life Insurance Company (Liberty National) appeals the district court's denial of its motion for judgment on the pleadings on plaintiffs' civil rights claims, filed pursuant to 42 U.S.C. §§ 1981 and 1982. Plaintiffs, a putative class of African Americans that purchased life insurance policies from Liberty National over the last sixty years, allege that Liberty National maintained a policy of charging higher premiums and paying lower benefits to African Americans than to whites. Liberty National contends that plaintiffs' claims are barred by both Alabama's applicable statute of limitations and Alabama's common law doctrine of repose. Liberty National further argues that §§ 1981 and 1982 frustrate Alabama's statutory scheme of insurance regulation and are thus reverse-preempted by the McCarran-Ferguson Act. Of these three distinct contentions, the district court certified only one for the instant interlocutory appeal: whether Alabama's doctrine of repose applies to, and therefore bars, plaintiffs' federal civil rights claims. On this issue, we conclude that Alabama's rule of repose does not apply to plaintiffs' §§ 1981 and 1982 claims. While we enjoy the discretion to decline to consider either of the two issues not certified for interlocutory appeal, we do have the jurisdiction to address those claims if we choose. We address and reject Liberty National's contention that the McCarran-Ferguson Act mandates the reverse-preemption of plaintiffs' §§ 1981 and 1982 claims. We decline to address plaintiffs' statute of limitations argument, as we do not

2

feel it appropriate for review at this time. Therefore, we affirm the district court's denial of Liberty National's motion for judgment on the pleadings.

## BACKGROUND

On December 8, 1999, four African American policyholders filed a class action complaint in the federal district court for the Northern District of Alabama, alleging that Liberty National engaged in racial discrimination by targeting low income African Americans and selling them industrial life insurance policies with higher premiums and lower benefits than those sold to whites. In their complaint, plaintiffs alleged that Liberty National sold policies in a racially discriminatory fashion from 1940 to the mid-1970s and that Liberty National continued to collect premiums on those policies until within two years of the filing of the complaint. The complaint alleged claims under § 1981, which prohibits racial discrimination in contractual relations, and also included a variety of state law claims.

Liberty National moved for judgment on the pleadings, and on April 7, 2000, the district court granted its motion. The district court ruled that the § 1981 claims accrued at the time the insurance contracts were made and therefore were barred by Alabama's two-year statute of limitations for personal injury torts. The court found that plaintiffs had not alleged fraudulent concealment with sufficient particularity to toll the statute of limitations. The court thus dismissed plaintiffs'

3

state law claims without prejudice to refiling in state court and dismissed the § 1981 claim with prejudice.

On April 21, 2000, plaintiffs filed a motion to alter or amend the judgment and also sought leave to file an amended complaint. Plaintiffs presented a proposed amended complaint to the court, which made specific allegations that Liberty National fraudulently concealed its alleged misconduct, and added claims under § 1982, which prevents racial discrimination in the maintenance of property. Plaintiffs contended that the proposed revisions repaired the deficiencies in the initial complaint and thus asked the court to reconsider its previous ruling dismissing the case on the pleadings (assuming the court granted plaintiffs leave to amend their complaint).

On July 3, 2000, after hearing oral argument, the district court granted plaintiffs' motion to alter or amend the April 7th order and also granted plaintiffs leave to file an amended complaint. The court found that the proposed amended complaint alleged with particularity (as that term is defined in Federal Rule of Civil Procedure 9(b)) that Liberty National fraudulently concealed the information that gave rise to plaintiffs' claims. The court held that the two-year statute of limitations would be tolled under Alabama law if these specific allegations were true.

Liberty National argued that even if the complaint could not be dismissed at the pleadings stage on the basis of the statute of limitations, Alabama's common law rule of repose would operate to bar plaintiffs' claims. The court found that the state rule of repose, which bars any suit arising out of any event more than twenty years old, barred all but one of plaintiffs' state law claims. In contrast, the court held that the state rule of repose was inapplicable to plaintiffs' federal civil rights claims. The court noted that statutes of limitations are essential features of any cause of action, and because § 1981 does not contain a statute of limitations, federal courts must borrow the applicable limitations period from state law. However, the court determined that absolute rules of repose are not necessary components of federal causes of action, so applying them to federal civil rights claims is unnecessary and improper.

Finally, the court rejected Liberty National's claim that §§ 1981 and 1982 frustrated the purposes of Alabama's scheme of insurance regulation and thus ran afoul of the McCarran-Ferguson Act.

Liberty National moved for permission to file an interlocutory appeal, and the district court granted that motion, certifying the following question for our consideration:

Whether Alabama's 20 year common law rule of repose bars the Plaintiffs in this action from pursuing federal claims under 42 U.S.C. §§ 1981 & 1982.

Liberty National promptly filed the instant interlocutory appeal.

DISCUSSION

A.

We review a district court's denial of "a judgment on the pleadings *de novo.*" *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998). Judgment on the pleadings is appropriate only when "the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (internal quotation marks omitted). We must accept all facts in the complaint as true and "view them in the light most favorable to the" plaintiffs. *Id.*

Liberty National's first contention in this appeal is that 42 U.S.C. § 1988(a) requires the application of Alabama's common law rule of repose to plaintiffs' §§ 1981 and 1982 claims. This claim presents an issue of law that is reviewed de novo. *Johansen v. Combustion Eng'g, Inc.,* 170 F.3d 1320, 1334 (11th Cir.), *cert. denied*, 528 U.S. 931 (1999). To put Liberty National's contention in context, we turn first to some background on Alabama's repose doctrine.

Alabama's judicially created rule of repose serves to bar claims that arise out of events that are more than twenty years old. *Ex parte Grubbs*, 542 So. 2d

6

927, 930–31 (Ala. 1989). Alabama's rule of repose "'is similar to a statute of limitations, but [is] not dependent upon one,'" and has a greater breadth than any such statute. *McDurmont v. Crenshaw*, 489 So. 2d 550, 552 (Ala. 1986) (quoting *Boshell v. Keith*, 418 So. 2d 89, 91 (Ala. 1982)). Unlike a statute of limitations, "the only element of the rule of repose is time." *Boshell*, 418 So. 2d at 91. "[The rule of repose] is not affected by the circumstances of the situation, by personal disabilities, or by whether prejudice has resulted or evidence obscured." *Id.* There is some debate in Alabama law concerning the types of claims to which the doctrine is applicable. It is unclear, for example, whether the rule applies to personal injury actions. *Spain v. Brown & Williamson Tobacco Corp.*, 230 F.3d 1300, 1307 (11th Cir. 2000) (acknowledging uncertainty about the scope of actions to which the rule of repose applies). However, it is clear that any claim in Alabama courts, brought more than twenty years after the time when it first could have been, is barred if the rule of repose applies. *Boshell,* 418 So. 2d at 91. The Alabama Supreme Court articulated the rationale for the rule as follows:

> As a matter of public policy . . . it has long been the settled policy of this state . . . that antiquated demands will not be considered by the courts . . . . It is necessary for the peace and security of society that there should be an end of litigation, and it is inequitable to allow those who have slept upon their rights for a period of 20 years . . . to demand an accounting.

*Snodgrass v. Snodgrass*, 58 So. 201, 201–02 (Ala. 1912).

7

Liberty National argues that the repose doctrine must be applied to bar plaintiffs' §§ 1981 and 1982 claims, as the events giving rise to each of the plaintiffs' claims are more than twenty years old. The governing statute concerning the appropriate rules of decision for the Reconstruction-era Federal Civil Rights Acts is codified at 42 U.S.C. § 1988(a). To evaluate Liberty National's argument, we turn first to the text of § 1988(a) itself:

> The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of titles 13, 24, and 70 of the Revised Statutes for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause, and, if it is of a criminal nature, in the infliction of punishment on the party found guilty.

42 U.S.C. § 1988(a).

The Supreme Court has interpreted this language as mandating "'a three-step process' in determining the rules of decision applicable to civil rights claims" brought pursuant to the Reconstruction-era Civil Rights Acts. *Wilson v. Garcia*, 471 U.S. 261, 267 (1985). First, courts are to look to the civil rights statutes themselves and determine if those statutes contain deficiencies that render them

8

impossible to effect.  *Id.*; *Robertson v. Wegmann*, 436 U.S. 584, 587 (1978).  If the statutes contain such a deficiency, then the courts should fill the gap by looking to the common law of the forum state and borrowing the appropriate state law rule.  *Wilson*, 471 U.S. at 267.   Finally, courts can apply the state common law rule only if it "is not inconsistent with the Constitution and laws of the United States." 42 U.S.C. § 1988(a); *Wilson*, 471 U.S. at 267.

Applying this analytic framework to the instant case, we first must ask whether §§ 1981 and 1982 "are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law." 42 U.S.C. § 1988(a).   Liberty National notes that §§ 1981 and 1982 lack a blanket rule of repose similar to the one that has developed in Alabama.  Liberty National argues that this absence amounts to a deficiency (as that term is defined by § 1988) that must be remedied through reference to state law.

When determining whether the Reconstruction-era Civil Rights Acts are deficient in some manner that requires borrowing from the law of the forum state, we look to see (1) whether the absent provision is among the "universally familiar" aspects of litigation; and (2) whether the provision is "indispensable to any scheme of justice." *Felder v. Casey*, 487 U.S. 131, 140 (1988).

9

On the first prong of the *Felder* analysis, the district court found that blanket rules of repose, as opposed to statutes of limitations, are rare in federal statutory schemes. We agree. Liberty National has not shown that blanket rules of repose form a regular feature of the prosecution of federal causes of action.[1] The absence of absolute rules of repose through most of the federal legal landscape makes it difficult to contend that statutes or rules of repose are "universally familiar" in federal litigation.

The fact that rules of repose rarely appear in federal law also cuts against any notion that a blanket rule of repose is "indispensable to any scheme of justice." Liberty National has not directed us to a single case in which a blanket state rule of repose was applied by a federal court to bar a federal civil rights claim, and we are not aware of any such case. The Reconstruction-era Civil Rights Acts have long been implemented by federal courts without applying any blanket rule of repose. Liberty National's contention that blanket rules of repose are "indispensable to any scheme of justice" would suggest that all prior federal

---

[1]The only case Liberty National cites for the proposition that rules of repose are an integral feature of federal litigation is *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350 (1991). In that case, the Court applied a blanket repose rule that was provided for in the text of 15 U.S.C. § 78r(c), a federal securities statute. *Id.* at 360–62. Liberty National has not contended that rules of repose are present in other federal statutory schemes and cannot demonstrate that they are a regular, much less a "universally familiar," element of federal litigation.

10

decisions applying the Reconstruction-era Civil Rights Acts are contrary to the principles of justice. We are not prepared to accept such a sweeping (and unsupportable) contention.

Alabama's rule of repose is analogous to the state "notice of claim" statute at issue in *Felder*. Wisconsin maintained a statute that required plaintiffs seeking to sue a state entity to notify the defendant(s) of an intent to sue within 120 days of the injury, at which time the defendant(s) has 120 days to grant or deny the requested relief. *Felder*, 487 U.S. at 136–37. If relief is denied, the plaintiff then has six months to bring suit in state court. *Id.* at 137. The plaintiff in *Felder* brought a 42 U.S.C. § 1983 action against the City of Milwaukee and several police officers nine months after the incident giving rise to the claim occurred.[2] *Id.* at 135. The Wisconsin Supreme Court rejected the plaintiff's claim for failure to comply with the 120-day time limit established by the notice of claim statute. *Id.* at 137. The United States Supreme Court reversed, holding that notice of claim statutes were neither "universally familiar" to federal causes of action nor in any sense indispensable prerequisites to litigation. *Id.* at 140. As such, there was

---

[2] The plaintiff alleged that he was beaten savagely in the course of being arrested for disorderly conduct. *Id*. at 135.

no reason to suppose that Congress intended this sort of state rule to be borrowed and applied to the federal civil rights statutes under § 1988. *Id*.

The analysis the Court employed in *Felder* is applicable to the instant case. Blanket rules of repose, much like notice of claim provisions, are not "universally familiar" to federal litigation; indeed, they rarely appear in federal law. Nor are rules of repose an indispensable prerequisite to litigation. Federal civil rights claims always have been litigated without the use of blanket rules or repose. Thus, there is no reason to believe that Congress intended for us to borrow such a rule under the terms of § 1988.

While the absence of a rule of repose is not a deficiency in the Reconstruction-era Civil Rights Acts that needs to be remedied through reference to state law, it is clear that the absence of a statute of limitations on the face of §§ 1981 and 1982 is such a deficiency. The Supreme Court has long recognized that statutes of limitations are an integral feature of any federal cause of action. *Wilson*, 471 U.S. at 271 ("Just determinations of fact cannot be made when, because of the passage of time, the memories of witnesses have faded or evidence is lost."); *Bd. of Regents of the Univ. of the State of N.Y. v. Tomanio,* 446 U.S. 478, 487 (1980) ("Statutes of limitations are not simply technicalities. On the contrary, they have long been respected as fundamental to a well-ordered judicial

system."); *Adams v. Woods*, 6 U.S. (2 Cranch) 336, 341 (1805) (Actions "brought at any distance of time" would be "utterly repugnant to the genius of our laws."). The absence of a statute of limitations in the language of §§ 1981 and 1982 is a deficiency in those statutes that must be filled through reference to appropriate state law. Neither Liberty National nor plaintiffs dispute that a state statute of limitations must be borrowed if §§ 1981 and 1982 are to be implemented. Liberty National, however, contends that Alabama's rule of repose is integral to its statutes of limitations and cannot be excluded when those statutes are applied.

To evaluate this argument, we must turn to the second prong of the § 1988(a) analysis, which involves the identification and application of an appropriate state rule to fill a recognized gap in the federal cause of action. Historically, in the statutes of limitations context, courts have struggled with this process. Most states have a plethora of statutes of limitations that apply to distinct causes of action in state law. In the past, federal courts attempting to apply the appropriate state limitations period to a federal civil rights claim had to analogize the factual allegations of the claim to a particular state cause of action – often a conceptually difficult and imperfect task. *See, e.g., Owens v. Okure*, 488 U.S. 235, 249 (1989). As a result, the Supreme Court established clear guidelines to govern the borrowing process. *Id.* at 250. To ensure some level of uniformity, the

13

Court held that a state's general or residual statute of limitations for personal injury torts should be borrowed for application to federal civil rights claims arising under the Reconstruction-era Civil Rights Acts. *Id.* at 250–51 (mandating the use of a state's residual personal injury statute of limitations for § 1983 claims); *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 660–62 (1987) (mandating the use of a state's residual personal injury statute of limitations for §§ 1981 and 1982 actions). This rule ensures that when a state has multiple limitations provisions, only one particular limitations rule is borrowed to fill the gap in the civil rights statutes.

Furthermore, when borrowing the residual personal injury statute of limitations from a state, federal courts borrow no more from state law than is necessary to effect that limitations period. *West v. Conrail*, 481 U.S. 35, 39–40 (1987); *Wilson*, 471 U.S. at 269 ("Only the length of the limitations period, and the closely related questions of tolling and application, are to be governed by state law."). Therefore, when applying a state's residual personal injury statute to fill the gap in §§ 1981 and 1982 claims, we borrow nothing from state law other than the terms of the statute itself and closely related state law principles intrinsic to its appropriate application, such as tolling doctrines.

Liberty National's contention that § 1988(a) mandates applying Alabama's repose doctrine to plaintiffs' §§ 1981 and 1982 claims is questionable in light of these well-established principles. We borrow as little as is necessary from state law in applying a state's statute of limitations pursuant to § 1988; in fact, we borrow only the length of the state's residual personal injury statute of limitations and any closely related state law principles necessary to effect that statute. Application of an additional, distinct state limitations period, such as a rule of repose, would contradict our mandate to borrow and apply only one specific limitations period to §§ 1981 and 1982 claims.

Liberty National argues that Alabama's repose doctrine is an integral part of the state's set of statutes of limitations and must be applied in tandem with those statutes if they are to be given their intended effect. In an effort to support this argument, Liberty National contends that the rule of repose is "part" of a unified, indivisible scheme involving limitations on actions and that the two doctrines cannot be divided for the purposes of application. Indeed, Liberty National argues that the rule of repose is one of the "closely related" state law doctrines intrinsic to the application of Alabama's statutes of limitations and therefore must be borrowed in the instant case.

15

Liberty National's arguments, however, often appear to conflate rules of repose and statutes of limitations and at points suggest that the two rules are indistinguishable legally.[3]   This approach is unconvincing, as it is clear that the doctrines are distinct, both conceptually and legally.  We identified this distinction before, when we noted,

> There is a distinct difference between statutes of limitations and statutes of repose.  A statute of limitations normally governs the time within which legal proceedings must be commenced after the cause of action accrues . . . . *A statute of repose, however, limits the time within which an action may be brought and is not related to the accrual of any cause of action*.

*Bradway v. Am. Nat'l Red Cross*, 992 F.2d 298, 301 (11th Cir. 1993) (alteration in original) (internal quotation marks omitted).

One of our sister courts clarified the distinction further when it discussed the differing purposes of statutes of limitations and a statute codifying Maryland's rule of repose:

---

[3]For example, Liberty National cites language from several Supreme Court cases in which the Court states that policies of "repose" are necessary components of all federal causes of action. *E.g.*, Brief of Pet'r at 18 (citing *Tomanio*, 446 U.S. at 488, which held that "state policies of repose cannot be said to be disfavored in federal law").  However, it is clear that the Court was referring to the policies of "repose" underlying state statutes of limitations and not the separate statutes or doctrines of repose that exist in Alabama and elsewhere.  Reading the cited opinions in context, it is obvious that the Court was not conflating or confusing statutes of limitations and rules of repose, but rather using the word "repose" to refer to the policy interest underlying state statutes of limitations.  The fact that the term "repose" may have been used to refer to statutes of limitations in several past Supreme Court opinions does not demonstrate that state statutes of limitations are linked inextricably to state rules of repose.

16

A statute of limitations is a procedural device that operates as a defense to limit the remedy available from an existing cause of action. A statute of repose creates a substantive right in those protected to be free from liability after a legislatively-determined period of time. Statutes of limitations are motivated by considerations of fairness to defendants and are intended to encourage prompt resolution of . . . claims. Statutes of repose are based on considerations of the economic best interests of the public as a whole and are substantive grants of immunity based on a legislative balance of the respective rights of potential plaintiffs and defendants struck by determining a time limit beyond which liability no longer exists.

*First United Methodist Church of Hyattsville v. United States Gypsum Co.*, 882 F.2d 862, 865–66 (4th Cir. 1989) (citations omitted). Liberty National's effort to blur the distinctions between the two doctrines is unavailing in light of this well-established law. In order to prevail on its claim that Alabama's doctrine of repose must be borrowed if the state's statutes of limitations are to be implemented, Liberty National must demonstrate that the statute of limitations and the doctrine of repose, despite their distinctions, are interdependent.

This Liberty National cannot do, because the statutes of limitations and rules of repose apply in ways that are independent of one another. Proper application of a statute of limitations is dependent upon principles of accrual. The time period begins to run when the cause of action arises and not necessarily on the date of the relevant act or omission. *Michael v. Beasley*, 583 So. 2d 245, 252 (Ala. 1991). A defining characteristic of the rule of repose is that its time period does not begin to run when the action accrues, but rather when the relevant action occurs. *Boshell,*

17

418 So. 2d at 91. Thus, the two doctrines are defined largely by reference to inconsistent rules of application; one takes accrual principles into account before its time period begins to run, while the other does not. The rule of repose and the statute of limitations do not affect each other directly, as they are triggered by entirely distinct events. Therefore, it is impossible to assert credibly that the doctrines depend upon each other or that application of the one necessarily involves application of the other. In fact, a statute of limitations can be and is applied in exactly the same manner regardless of the outcome of the distinct, separate application of the rule of repose.

Of course, Alabama's rule of repose may serve to bar actions that would have been permitted under Alabama's relevant statute of limitations. Obviously, the reverse also is true; actions permissible under the rule of repose may be barred by the shorter statute of limitations. However, none of this means that the two doctrines are somehow linked or interdependent. Alabama maintains several distinct doctrines that provide for time limits on causes of action, among them a rule of repose and a set of statutes of limitations, and each of these doctrines have their own unique rules of application.

This principle – the distinctiveness of the rule of repose and its independence from statutes of limitations – has been noted in Alabama case law.

18

Alabama authorities distinctly distinguish between statutes of limitations and the repose doctrine and emphasize the independence of the rule of repose. *Grubbs*, 542 So. 2d at 930 ("[Repose] is similar to, but broader than, a statute of limitations, *and is not affected by it, nor dependent upon it.*" (emphasis added) (citations omitted)); *Boshell*, 418 So. 2d at 91 ("This principle of repose or prescription is similar to a statute of limitations, but not dependent upon one, and broader in scope."). There is nothing in Alabama's case law that suggests that its statutes of limitations and rules of repose are interdependent in any way.[4]

In sum, the absence of a blanket rule of repose in the text of the Reconstruction-era Civil Rights Acts is not a gap in federal law that must be filled to implement the Acts. Such rules are rare in federal law, and they are not a necessary prerequisite to litigation in an ordered system of justice. In contrast, the absence of a statute of limitations in §§ 1981 and 1982 is a deficiency that must be remedied by reference to state law. In borrowing a state statute of limitations,

---

[4] Liberty National's reliance on the ancient case of *Balkam v. Woodstock Iron Co.*, 154 U.S. 177 (1894), for the proposition that Alabama's rule of repose and its statutes of limitations are linked inextricably is misplaced. In that case, the Supreme Court declined to disturb an Alabama judgment that applied the rule of repose to bar a claim. *Id.* at 189. The Court noted that state courts were the ultimate authority on questions pertaining to the application of state statutes of limitations; by analogy, the Court held that Alabama courts had the final word on the doctrine of repose. *Id.* (In deciding questions pertaining to the doctrine of repose, the Alabama Supreme Court "passed upon its own statutes of limitations, or the doctrines of prescription as applied by it, and we are obliged to apply and enforce their conclusions."). The case does not hold, as Liberty National suggests, that the rule of repose is a part of Alabama's statutes of limitations.

19

however, federal courts select only one of the state's limitations periods (namely, the residual state statute of limitations for personal injury torts) and borrow no more from state law than is necessary to implement that limitations period. The length of Alabama's two-year statute of limitations for personal injury torts, along with closely related state law questions of tolling and application, are all courts need borrow to implement §§ 1981 and 1982 properly. Courts should not borrow Alabama's entirely distinct repose doctrine, as it is not necessary to apply this doctrine to effect the applicable state statute of limitations.

## B.

Liberty National raises two additional questions outside the scope of the issue the district court certified for interlocutory appeal. First, Liberty National contends that Alabama's two-year statute of limitations for personal injury bars plaintiffs' claims. Second, it contends that section 27-12-11(a) of the Alabama Code, which prohibits discrimination in life insurance rates between individuals of the same life expectancy, reverse-preempts §§ 1981 and 1982 under the terms of the McCarran-Ferguson Act, codified at 15 U.S.C. § 1012.

Under 28 U.S.C. § 1292(b), we retain the discretion to decline to address any issues not certified for interlocutory appeal by the district court. *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1275 n.4 (11th Cir. 1999). However, the district

20

court's order, not the certified question, is brought before the court on a § 1292(b) appeal, and this court's jurisdiction is not confined to the precise question certified by the district court. *Yamaha Motor Corp. v. Calhoun*, 516 U.S. 199, 204–05 (1996).

In the instant case, we decline to consider Liberty National's contention that Alabama's relevant statute of limitations bars plaintiffs' claims. We conclude that the facts necessary to address many of Liberty National's claims with respect to this issue have not been developed adequately at this stage of the proceedings.

Liberty National's contention that §§ 1981 and 1982 are reverse-preempted by Alabama's scheme of insurance regulation is not dependent upon unresolved factual issues. It therefore is appropriate for resolution at this stage of the proceedings. We thus turn to the question of whether the McCarran-Ferguson Act precludes the application of §§ 1981 and 1982 in the Alabama insurance context.

## C.

The question of whether the McCarran-Ferguson Act mandates preemption of the §§ 1981 and 1982 claims presents a legal issue of statutory interpretation, which we review de novo. *Blackfeet Nat'l Bank v. Nelson*, 171 F.3d 1237, 1240 (11th Cir.), *cert. denied*, 528 U.S. 1004 (1999).

The McCarran-Ferguson Act states that "[n]o act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance . . . unless such Act specifically relates to the business of insurance." 15 U.S.C. § 1012(b). The Act thus bars the application of federal law if (1) the federal statute at issue does not "'specifically relat[e] to the business of insurance'"; (2) the state statute at issue was "'enacted . . . for the purpose of regulating the business of insurance'"; and (3) application of the federal statute would "'invalidate, impair, or supersede'" the state statute. *Humana Inc. v. Forsyth*, 525 U.S. 299, 307 (1999) (alterations in original) (quoting 15 U.S.C. § 1012(b)).

There is no question that §§ 1981 and 1982, by their terms, do not relate specifically to the business of insurance, so the first prong of the *Humana* analysis is satisfied. It also is clear that the state statute that Liberty National has put at issue was enacted for the purpose of regulating the business of insurance. The statute, codified at section 27-12-11 of the Alabama Code, provides as follows:

> (a) No person shall make or permit any unfair discrimination between individuals of the same class and equal expectation of life in the rates charged for any contract of life insurance or of life annuity, or in the dividends or other benefits payable thereon or in any other of the terms and conditions of such contract.

Ala. Code § 27-12-11. Therefore, our task is limited to determining whether §§ 1981 and 1982 "invalidate, impair, or supersede" the terms of the statute above.

Liberty National contends that §§ 1981 and 1982, when applied to the life insurance context, thwart Alabama's carefully crafted scheme of insurance regulation. Liberty National asserts that Alabama bans unfair discrimination among individuals of the same life expectancy, but explicitly permits all other forms of discrimination in the provision of insurance. Therefore, Liberty National argues that racial discrimination is acceptable in the Alabama life insurance context so long as those racial distinctions have an actuarial basis, *i.e.* they are not used to discriminate among individuals with the same expectation of life.

Plaintiffs respond with two distinct arguments in support of their contention that the McCarran-Ferguson Act does not mandate preempting their civil rights claims. Plaintiffs first contend that the Reconstruction-era Civil Rights Acts are not subject to the reverse-preemption provision of the McCarran-Ferguson Act, as the McCarran-Ferguson Act was intended to apply solely to federal statutes passed pursuant to the Constitution's Commerce Clause, not to legislation rooted in Congress's power to enforce the Thirteenth and Fourteenth Amendments, such as the Civil Rights Acts. *Spirt v. Teachers Ins. & Annuity Ass'n*, 691 F.2d 1054, 1066 (2d Cir. 1982), (holding that the McCarran-Ferguson Act had no application to

23

civil rights statutes, labor laws, and other areas of "national concern"), *vacated*,

463 U.S. 1223 (1983), *reinstated as modified*, 735 F.2d 23 (2d Cir. 1984).

Alternatively, plaintiffs contend that §§ 1981 and 1982 do not "invalidate, impair,

or supersede" section 27-12-11 of the Alabama Code and therefore are not reverse-

preempted by the McCarran-Ferguson Act.

We decline to address the first of plaintiffs' contentions, as a decision on the

applicability of the McCarran-Ferguson Act to the Reconstruction-era Civil Rights

Acts is unnecessary for a resolution of this appeal. We agree with the district court

that §§ 1981 and 1982 do not "invalidate, impair, or supersede" Alabama's scheme

of insurance regulation and therefore are not subject to the reverse-preemption

provisions of the McCarran-Ferguson Act.

In *Humana*, the Supreme Court reiterated definitions it employed in earlier

cases with respect to the terms "invalidate" and "supersede." 525 U.S. at 307.

Invalidate "means to render ineffective, generally without providing a replacement

rule or law," while supersede generally "means to displace (and thus render

ineffective) while providing a substitute rule." *Id.* (internal quotation marks

omitted). The term "impair" has a more complex meaning; the Court defined that

term as follows:

> When federal law does not directly conflict with state regulation, and when
> application of the federal law would not frustrate any declared state policy or

24

> interfere with a State's administrative regime, the McCarran-Ferguson Act does not preclude its application.

*Id.* at 310.

The language of §§ 1981 and 1982 does not "invalidate" or "supersede" the terms of the relevant Alabama statute. Sections 1981 and 1982 prohibit racial discrimination in the making of contracts and the acquisition and disposal of real and personal property; Alabama's insurance statute prohibits "unfair discrimination" in the pricing of life insurance rates (or the payment of dividends) for persons with the same life expectancy. The federal rule does not contradict directly the terms of the state statute or render it impossible to effect or implement that statute. The rules proscribe different, though possibly overlapping, conduct and do not conflict directly. They certainly cannot be construed as operating to invalidate or supersede one another.

Therefore, the only real question in this matter is whether the Reconstruction-era Civil Rights Acts "impair" section 27-11-12 of the Alabama Code, *i.e.* whether the Reconstruction-era Civil Rights Acts frustrate any declared state policy or interfere with the state's administrative regime in the insurance context.

Liberty National has not demonstrated that §§ 1981 and 1982, applied to insurance contracts, frustrate any declared state policy, because they have not

25

demonstrated that it is in fact the policy of Alabama to encourage or condone racial distinctions in the provision of life insurance. We have not been directed to any relevant Alabama authority that has required, condoned, or suggested that racial distinctions in the provision of life insurance are acceptable. Indeed, there is nothing in Alabama's insurance law that directs or encourages insurers to engage in such practices. *See NAACP v. Am. Family Mut. Ins. Co.*, 978 F.2d 287, 297 (7th Cir. 1992) (finding that Fair Housing Act provisions banning discriminatory "redlining" in setting insurance rates are not reverse-preempted by the McCarran-Ferguson Act because there was no state decision, regulation, or statute "requiring redlining, condoning that practice, . . . or holding that redlining . . . does not violate state law"). The Seventh Circuit made note of the fact that the State did not intervene in the *American Family* case to argue that the federal law at issue would frustrate its scheme of insurance regulation. The State of Alabama likewise does not intervene in this case.

Liberty National asks us to make a substantial interpretive leap in our construction of Alabama's life insurance regulations. We are asked to assume that the abolition of one form of discrimination, as codified in section 27-11-12, amounts to a clear declaration by the state that all other forms of discrimination, however invidious, are acceptable. We cannot construe Alabama's scheme of

insurance regulation in such a formalistic and narrow way. Absent more convincing evidence that racial discrimination in the insurance context is an integral part of Alabama's regulatory scheme, Liberty National's argument must fail.

Pertinent guidance in analyzing this issue comes from the Supreme Court decision in *SEC v. National Securities, Inc.*, 393 U.S. 453 (1969). In that case, the Court upheld the SEC's authority (against a McCarran-Ferguson Act challenge) to block an insurance company merger approved by the Arizona regulatory authorities. The Court found that "Arizona ha[d] not commanded something [that] the Federal Government [sought] to prohibit. It ha[d] permitted respondents to consummate the merger; it did not order them to do so." *Id*. at 463. The Court concluded that "[t]he paramount federal interest in protecting shareholders is . . . perfectly compatible with the paramount state interest in protecting policyholders." *Id*.

The analysis that the Court employed in *National Securities* is applicable to the instant case. In *National Securities*, the Court faced a situation in which the conflict between federal and state interests was much more pointed than the conflict in the instant case. The state determined that the merger was acceptable under the state's insurance guidelines; the federal government blocked that same

27

merger on other grounds. Rather than rely upon the conflicting actions of the two entities, the Court analyzed what, in fact, Arizona had done by permitting the merger to go forward. The Court correctly noted that Arizona's action was not an unambiguous command that the merger go forward; rather, it was simply a grant of permission for the companies involved to do so. It was precisely because Arizona's actions did not amount to a clear command to consummate the merger that the federal actions preventing that merger were not construed as inconsistent with Arizona's regulatory scheme.

In the instant case, we likewise cannot conclude that Alabama intended to condone racial discrimination in its scheme of insurance regulation. We therefore see no inconsistency between the state's interest in preventing "unfair discrimination" between individuals with similar life expectancies and the paramount national interest in preventing racial discrimination in the contexts articulated by §§ 1981 and 1982. The two nondiscrimination principles complement each other, and Liberty National has not demonstrated that the federal statutes at issue impinge on any declared state policy in the insurance context. Therefore, the McCarran-Ferguson Act does not require the reverse-preemption of plaintiffs' §§ 1981 and 1982 claims.

CONCLUSION

28

In conclusion, we hold that the district court did not err when it declined to apply Alabama's common law doctrine of repose to block plaintiffs' federal civil rights claims. We further hold that §§ 1981 and 1982 are not reverse-preempted by section 27-12-11 of the Alabama Code. The Reconstruction-era Civil Rights Acts complement, rather than conflict with, Alabama's regulatory scheme in the insurance context, and, therefore, the McCarran-Ferguson Act has no application to the instant case. We decline to address Liberty National's claim that the applicable statute of limitations bars plaintiffs' claims.

The order of the district court is

AFFIRMED.